# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MPC Computers, LLC, *et al.*,[1]<br><br>        Debtors. | Chapter 11<br><br>Case No. 08-12667 (PJW)<br>(Jointly Administered)<br><br>Re: Docket Nos. 585, 693, 842, 906<br><br>Proposed Objection Deadline: October 13, 2010<br>Proposed Hearing Date: October 18, 2010 at 9:30 a.m. |

**DEBTORS' MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. § 363
AND FED.R.BANKR.P. 9019 AUTHORIZING AND APPROVING THE SETTLEMENT
AGREEMENT BY AND AMONG GATEWAY, INC., GATEWAY TECHNOLOGIES, INC.,
THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

The above-captioned debtors and debtors-in-possession, by and through their undersigned counsel, respectfully move this Court, pursuant to Section 363 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order approving the Settlement Agreement by and among Gateway, Inc. and Gateway Technologies, Inc. (collectively, "Gateway") and MPC Computers, LLC, MPC Corporation, GTG PC Holding, LLC, MPC-G, LLC, MPC Solution Sales, LLC, MPC-Pro, LLC, Gateway Companies, Inc., Gateway Pro Partners, LLC, and Gateway Professional, LLC (collectively, the "Debtors") and the Official Committee of Unsecured Creditors of the Debtors' estates (the "Committee" and together with the Debtors and Gateway, the "Parties"). In support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors in these cases, along with the last four digits of their federal tax identification numbers are MPC Computers, LLC (6916); MPC Corporation (7562); GTG PC Holdings, LLC (6899); MPC-G, LLC (8015); MPC Solutions Sales, LLC (0213); MPC-Pro, LLC (3132); Gateway Companies, Inc. (1398); Gateway Pro Partners, LLC (9747); and Gateway Professional, LLC (8881).

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are Section 363 of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules.

**FACTUAL BACKGROUND**

**The Bankruptcy Cases**

4. On November 6, 2008 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

5. The Debtors are liquidating their businesses and managing their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

6. The Committee was appointed in the Debtors' Chapter 11 cases on November 21, 2008.

**The Debtors' Pre-Petition Transactions with Gateway**

7. On October 1, 2007, MPC-Pro, LLC acquired (the "Gateway Acquisition") all of the capital stock of Gateway Companies, Inc. and the membership interests of Gateway Professional, LLC and Gateway Pro Partners, LLC.

8. On October 1, 2007, in connection with the Gateway Acquisition, MPC-Pro, LLC ("MPC-Pro") and Gateway Companies, Inc. ("Gateway Companies") entered into a Transition Services Agreement (the "TSA") with Gateway. Pursuant to the TSA, Gateway performed certain accounting, human resource, manufacturing, procurement, marketing, information technology and other specified services set forth in the TSA. Gateway also undertook certain

other activities on behalf of MPC-Pro and Gateway Companies and sold certain component inventory to MPC-Pro and/or Gateway Companies.

9. In connection with the TSA, Wells Fargo Business Credit ("Wells Fargo"), Gateway, Gateway Companies, and MPC-Pro entered into an intercreditor agreement (the "Intercreditor Agreement") pursuant to which Gateway Companies and MPC-Pro granted Gateway a security interest in certain enumerated property as more fully described in the Intercreditor Agreement, including proceeds thereof (the "Gateway Cash Collateral"). Gateway's interests in the Gateway Cash Collateral were subject and subordinate to the security interests granted to Wells Fargo under certain Account Purchase Agreements.

10. From time to time thereafter, Wells Fargo, Gateway, Gateway Companies and MPC-Pro executed certain amendments to the Intercreditor Agreement, including, on October 17, 2008, that certain Fifth Agreement Amendment (the "Fifth Amendment").

11. As of the Petition Date, the Debtors' obligations to Wells Fargo were fully satisfied under those certain Account Purchase Agreements.

12. Gateway has asserted claims against MPC-Pro and Gateway Companies totaling at least $15,482,325.72 as a result of, among other things, the Debtors' obligations under the TSA (the "Gateway Claim").

**The Debtors' Use of Gateway's Cash Collateral**

13. On the Petition Date, the Debtors filed the Debtors' Motion for Entry of an Order Pursuant to 11 U.S.C. Sections 105 and 363(c)(2)(A) or, if applicable, 361 and 363(c)(2)(B), and Federal Rules of Bankruptcy Procedure 4001 Authorizing Debtors' Use of Cash Collateral (the "Cash Collateral Motion"; D.I. 7). On November 7, 2008, Gateway filed its Limited Objection to the Cash Collateral Motion, objecting, *inter alia*, on the basis that the Debtors failed to

provide for the protection of Gateway's interest in the Gateway Cash Collateral (D.I. 20). On November 10, 2008, the Court entered an Interim Order approving the Cash Collateral Motion (D.I. 29), and a Final Order on December 12, 2008 (D.I. 113).

14. On December 10, 2008, Gateway filed a Motion for Adequate Protection, seeking an order providing for adequate protection of its interest in the Gateway Cash Collateral (the "<u>Motion for Adequate Protection</u>"; D.I. 101). The Debtors and the Committee objected to the relief requested in the Motion for Adequate Protection (D.I. 143 and 144).

15. On January 28, 2009, the Court entered that certain Agreed Order Regarding (I) Establishment of Segregated Account for MPC-Pro, LLC Accounts and (II) Reservation of Rights of the Debtors and Gateway, Inc. (the "<u>Agreed Order</u>"; D.I. 177). The Agreed Order resolved the objections filed by the Debtors and Committee to the Motion for Adequate Protection and provided that "the Debtors shall deposit (i) all amounts received on account of receivables owned by MPC-Pro, LLC and (ii) all cash maintained in any deposit accounts owned by MPC-Pro, LLC into a deposit account in the name of MPC-Pro, LLC" (the "<u>Segregated Account</u>").

16. On October 23, 2009, the Debtors filed the Debtors' Motion for Authority to Use Funds in Segregated Account (the "<u>Segregated Account Motion</u>"; D.I. 585). On December 10, 2009, Gateway filed its Preliminary Objection to the Segregated Account Motion (D.I. 640).

17. On December 23, 2009, this Court held a hearing on the Segregated Account Motion with respect to the issue of whether Gateway was entitled to adequate protection notwithstanding its unconditional grant of consent to the use of cash collateral in the Debtors' bankruptcy cases. Following the hearing, on December 29, 2009, the Court entered an Order (the "<u>Segregated Account Order</u>"; D.I. 680).

18. On January 11, 2010, Gateway filed a Notice of Appeal from the Segregated Account Order (D.I. 693).

19. On January 28, 2010, the Court entered an Order Staying Effectiveness of Order and Scheduling Discovery and Further Proceedings Regarding "Part B" of the Debtors' Motion for Authority to Use Funds in Segregated Account (D.I. 712).

20. Gateway's appeal (the "Appeal") from the Segregated Account Order is pending in the United States District Court for the District of Delaware as case number 10-139 (GMS).

**The Adversary Proceedings**

21. On June 9, 2010, Gateway commenced an adversary proceeding (10-51220 (PJW)) (the "Gateway Adversary") (D.I. 842) against the Debtors seeking, *inter alia*: (1) a declaration that $279,931.25 transferred by the State of California State Board of Equalization to the Debtors on or about July 2009 is not the property of the Debtors' estates and is held by the Debtors in a post-petition constructive trust for the benefit of Gateway; (2) the imposition of a constructive trust over such funds to prevent the unjust enrichment of the Debtors; (3) turnover of such funds to Gateway; and (4) a declaration that any remaining funds in the escrow account are not the property of the Debtors' estates.

22. On July 22, 2010, the Debtors filed their Answer, Affirmative Defenses and Counterclaims of the Debtors to Gateway, Inc.'s Complaint for Declaratory Relief and Turnover of Funds in the Gateway Adversary (the "Debtors' Answer and Counterclaims") (Gateway Adversary; D.I. 4). In the Debtors' Answer and Counterclaims, the Debtors asserted, *inter alia*, counterclaims seeking: (1) avoidance, pursuant to 11 U.S.C. § 547(b), of certain transfers to Gateway totaling $92,756.67; (2) recovery of such transfers pursuant to 11 U.S.C. § 550; (3) avoidance of the attachment of Gateway's security interest to assets of MPC-Pro or Gateway

Companies by virtue of an after-acquired property clause or otherwise; and (4) disallowance of the Gateway Claim until Gateway paid the Debtors an amount equal to all avoidable transfers received by Gateway.

23. On August 26, 2010, the Debtors commenced an adversary proceeding (10-52904 (PJW)) (the "MPC Adversary") (D.I. 906) against Gateway seeking, *inter alia*: (1) avoidance of Gateway's security interest in any assets or property of Gateway Companies as of the petition date and the proceeds thereof; (2) avoidance of Gateway's security interest in deposit accounts held by Wells Fargo Bank, National Association, and the proceeds thereof; (3) a declaration that Gateway's security interests did not attach to "equipment"; (4) a declaration that Gateway's claims against Gateway Companies are not secured claims; (5) a declaration that Gateway's prepetition and rejection damages claims against MPC-Pro relating to certain nonresidential real property leases are not secured claims; and (6) a judgment pursuant to 11 U.S.C. § 506(c) for all reasonable, necessary costs and expenses of preserving, or disposing of any collateral securing Gateway's secured claim, to the extent allowed.

**The Settlement**

24. The Parties have reached a settlement of all of their existing disputes pursuant to the terms and conditions of the Mutual Settlement Agreement and Release (the "Settlement Agreement"), attached as Exhibit A to the proposed order attached hereto.

25. The terms of the Settlement Agreement include:

    (i)    a mutual general release of all claims of the opposing Parties;

    (ii)    a settlement payment (the "Settlement Payment") by the Debtors to Gateway in the amount of Five Million, Six Hundred Fifty Thousand Dollars ($5,650,000);

(iii) Gateway's entitlement to 45% of the net proceeds (less costs of collection including reasonable attorneys fees) of the accounts receivable of MPC-Pro, obtained from May 31, 2010 until the entry date of a final decree in the Debtors' bankruptcy cases;

(iv) the Debtors' assignment to Gateway of all warranty claims of the Debtors relating to extended warranties for Gateway-branded products sold prior to October 1, 2007; and

(v) the allowance of Gateway's unsecured deficiency claim against the Debtors' estates in the amount of the Gateway Claim, less the Settlement Payment and Gateway's receipt of certain proceeds of MPC-Pro's accounts receivable as provided above.[2]

## RELIEF REQUESTED

26. By this Motion, the Debtors request, in accordance with 11 U.S.C. § 363 and Bankruptcy Rule 9019, that this Court enter an order approving the Settlement Agreement.

## BASIS FOR RELIEF REQUESTED

27. Section 363(b)(1) provides that the trustee "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 363 is the statutory basis governing settlement agreements. See In re Martin, 91 F.3d 389, 394 & n.2 (3d Cir. 1996).

28. Rule 9019(a) of the Bankruptcy Rules provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."

29. Settlements and compromises are favored in the bankruptcy context "[t]o minimize litigation and expedite the administration of a bankruptcy estate." In re Martin, 91

---

[2] The terms set forth above have been identified solely for illustrative purposes. For a full understanding of the Settlement Agreement and its terms, interested parties are directed to review the Settlement Agreement attached as Exhibit A to the attached proposed order. To the extent that there are inconsistencies between the summary of the terms of the Settlement Agreement set forth above and the Settlement Agreement, the terms of the Settlement Agreement shall control.

- 7 -

F.3d at 393.  The Supreme Court has recognized that "[i]n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts."  In re Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968).

30. Pursuant to 11 U.S.C. Section 363(b) and Fed.R.Bankr.P. 9019(a), this Court has the authority to approve a compromise or settlement of claims asserted by or against a debtor.  See Martin, 91 F.3d at 394 n.2.

31. The standard for approval of a compromise is whether the proposed settlement or stipulation is "fair and equitable" and in the best interest of the estate.  TMT Trailer Ferry, Inc., 390 U.S. at 424.  To approve a compromise or settlement pursuant to Bankruptcy Rule 9019, this Court must conclude that the compromise or settlement falls above "the lowest point in the range of reasonableness."  In re Pennsylvania Truck Lines, Inc., 150 B.R. 595, 598 (E.D.Pa. 1992), aff'd, 8 F.3d 812 (3d Cir. 1993).  In determining the scope of this range of reasonableness, courts have considered, *inter alia*:

 a) probability of success in the litigation;

 b) the likely difficulties in collection;

 c) the complexity of the litigation involved, and delay necessarily attending it; and

 d) the paramount interest of the creditors.

See Will v. Northwestern University (In re Nutraquest, Inc.), 434 F.3d 639 (3d Cir. 2006); Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002); In re Martin, 91 F.3d at 393; Pennsylvania Truck Lines, 150 B.R. at 598; In re Grant Broadcasting of Philadelphia, Inc., 71 B.R. 390, 395 (Bankr. E.D. Pa. 1987); see also Martin v. Kane (In re A &

C Properties), 784 F.2d 1377, 1381 (9th Cir. 1986); In re Flight Transp. Corp. Sec. Litig., 730 F.2d 1128, 1135 (8th Cir. 1984), cert denied, 105 S.Ct. 1169 (1985).

32. In approving a settlement under Fed.R.Bankr.P. 9019(a), "a judge does not have to be convinced that the settlement is the best possible compromise." Nellis v. Shugrue, 165 B.R. 115, 123 (S.D.N.Y. 1994). Rather, the settlement must only fall within "the reasonable range of potential litigation possibilities." In re Penn Cent. Transp. Co., 596 F.2d 1127, 1152 (3d Cir. 1979) (citation omitted).

33. The reviewing court need not conduct its own investigation concerning the reasonableness of the settlement and may consider the opinion of counsel that the settlement is fair and equitable. See In re Purofied Down Prods. Corp., 150 B.R. 519, 522 (S.D.N.Y. 1993). Moreover, the bankruptcy court should not "substitute its judgment for that of the trustee." In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa 1986). Rather, a court should "defer to the trustee's judgment so long as there is a legitimate business justification." In re Martin, 91 F.3d at 395.

34. Pursuant to Bankruptcy Rule 9019(a), approval of a settlement is within the sound discretion of this Court. In re Martin, 91 F.3d at 393; Connecticut Gen. Life Ins. Co. v. United Companies Fin. Corp. (In re Foster Mortgage Corp.), 68 F.3d 914, 917 (5th Cir. 1995); LaSalle Nat'l Bank v. Holland (In re American Reserve Corp.), 841 F.2d 159, 162 (7th Cir. 1987); U.S. v. Alaska Nat'l Bank of the North (In re Walsh Constr., Inc.), 669 F. 2d 1325, 1328 (9th Cir. 1982). A court is not required to conduct a mini trial of the facts. Purofied Down, 150 B.R. at 523; Grant Broadcasting, 71 B.R. at 396; see also A&C Properties, 784 F.2d at 924-25.

35. The Debtors, acting with the involvement of the Committee, have evaluated all of the issues presented with respect to the rights and claims asserted by and against Gateway in

these bankruptcy cases including, without out limitation, those rights and claims concerning the Gateway Claim, the Segregated Account Motion, the Appeal, the Gateway Adversary and the MPC Adversary.

36. Applying the standard for approval of a settlement agreement under Bankruptcy Rule 9019(a), the Debtors assert that the Settlement Agreement should be approved. The Settlement Agreement takes into account the probability of success with respect to the various issues raised. While the Debtors believe they possess meritorious arguments and will likely prevail, the outcome is uncertain in light of the inherent risk of litigation and certain disputed factual issues.

37. The complexity, expense, inconvenience, and delay associated with litigation also weigh in favor of compromise. Litigating all of the issues resolved by the Settlement Agreement would require the devotion of substantial time and resources, a burden which the Settlement Agreement eliminates. Any litigation would necessarily be protracted and would entail considerable future expense and delay to the detriment of all parties involved. Approving the Settlement Agreement enables the Debtors to avoid the cost and uncertainty associated with litigation with Gateway and to focus instead on winding down their estates.

38. Considering the relative probabilities of success, the complex nature, and the inherent and uncertain risks of litigation, and the cost, expense, inconvenience, and delay associated with the same, the proposed Settlement Agreement is prudent, fair, reasonable, equitable, and reflects a sound and reasonable business judgment by the Debtors.

39. Accordingly, the Debtors submit that the Settlement Agreement falls well within the range of reasonableness and otherwise satisfies the factors identified herein. Based upon the foregoing, the Debtors believe that the Settlement Agreement should be approved.

## NOTICE

40. The Debtors will serve notice of this Motion upon: (i) the Office of the United States Trustee; (ii) counsel to the Committee; (iii) counsel to Gateway; and (iv) those parties requesting notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request that the Court (i) enter an order (substantially in the form attached to this Motion) approving the Settlement Agreement and (ii) granting such other and further relief as the Court may deem necessary and proper.

Dated: October 4, 2010
Wilmington, Delaware

Respectfully submitted,

REED SMITH LLP

By: /s/ J. Cory Falgowski
Richard A. Robinson (No. 5059)
J. Cory Falgowski (No. 4546)
1201 Market Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 778-7500
Facsimile: (302) 778-7575

Counsel for MPC Computers, LLC, *et al.*
Debtors and Debtors-in-Possession