during the course of the Chapter 11 Case, and after application of any retainer received by the Professionals.

Any final application for allowance of a Professional Fee Claim for services rendered and costs incurred through the Effective Date, must be filed with the Bankruptcy Court and served on counsel for the Debtors, counsel for the Liquidating Trust and the Liquidating Trustee, and counsel for the Committee and on the Office of the United States Trustee so that it is received no later than forty-five (45) days after the Effective Date. If such date passes and Professionals are still retained with respect to the Debtor(s) that have not yet gone effective, such applications for allowance of a Professional Fee Claim shall be filed no later than 180 days after the Effective Date, provided that the Liquidating Trust or the Liquidating Trustee may request (and the Bankruptcy Court may grant) an extension of such deadline by filing an ex parte motion with the Bankruptcy Court, based upon a reasonable exercise of the Liquidating Trustee's business judgment. A motion seeking to extend the above deadline shall not be deemed an amendment to the Plan. In the event an application for allowance of a Professional Fee Claim is not filed by the appropriate date, such Professional Fee Claim shall be forever barred and shall not be enforceable against the Debtors, their Estates, the Liquidating Trust, the Liquidating Trustee and their successors, their assigns or their Assets. Allowed Professional Fee Claims must be paid in full and Professional Fee Claims pending allowance by the Bankruptcy Court must be reserved for in full prior to any payment to Holders of Allowed Claims in Class 4 (General Unsecured Claims).

*(b) Priority Tax Claims*

The Disbursing Agent shall pay each Holder of an Allowed Priority Tax Claim in full, in Cash, as soon as practicable after the later of (i) the Effective Date, or (ii) the date such Priority Tax Claim becomes an Allowed Claim. All Allowed Priority Tax Claims against the Debtors that are not due and payable on or before the Effective Date, shall be paid in the ordinary course of business in accordance with the terms thereof. The Liquidating Trustee can prepay any Allowed Priority Tax Claim at any time after the Effective Date, without any penalty or charge.

Holders of Allowed Priority Tax Claims will not be entitled to receive any payment on account of any penalty arising with respect to or in connection with such Claims. Any Claim for any such penalty, or demand for any such penalty, will be deemed disallowed by confirmation of the Plan.

2. Classification and-treatment of Classified Claims

*(a) Class 1-Other Priority Non-Tax Claims*

(1) *Classification:* Class 1 consists of all Allowed Other Priority Non-Tax Claims.

(2) *Treatment:* As soon as practicable after the later of (i) the Effective Date, or (ii) the date on which the Other Priority Non-Tax Claim becomes an Allowed Claim, in full satisfaction, settlement, release, and discharge of, and in exchange for each Allowed Other Priority Non-Tax Claim that is due and payable, the Disbursing Agent shall pay

each Holder of an Allowed Class 1 Claim, in relative order of priority pursuant to Bankruptcy Code § 507, in full, in Cash, without interest.

(3)     *Voting*: Class 1 is unimpaired and the Holders of Class 1 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Claims in Class 1 are not entitled to vote to accept or reject the Plan.

(b)     *Class 2— Gateway Secured Claims*

(i)     *Classification*: Class 2 consists of ~~all Allowed~~the Gateway Secured Claims.

(ii)     *Treatment*: ~~The~~In accordance with the Gateway Settlement Agreement, the Holders of Class 2 Claims shall be entitled to receive 45% of the net proceeds (less any and all costs of collection including reasonable attorneys' fees) of accounts receivable of MPC-Pro, obtained from May 31, 2010 until the date of entry of a final decree in the cases of each of the Debtors, which amounts shall be applied to further reduce the Gateway Deficiency Claim.

(iii)     *Voting*: Class 2 is impaired and Holders of Class 2 Claims are entitled to vote to accept or reject the Plan.

(c)     *Class 3—Other Secured Claims that are not Class 1 or 2 Claims*

(i)     *Classification*: Class 3 consists of all Allowed Other Secured Claims that are not Class 1 or 2 Claims.

(ii)     *Treatment*: On the Effective Date or as soon as practicable thereafter, each Holder of an Allowed Other Secured Claim (e.g. PMSI Holders, equipment financing lenders, etc.) shall receive one of the following treatments, at the option of the Liquidating Trustee, after consultation with the Trust Oversight Committee, such that they shall be rendered unimpaired pursuant to section 1124 of the Bankruptcy Code: (i) the payment of such Holder's Allowed Other Secured Claim in full, in Cash; (ii) the sale or disposition proceeds of the property securing such Allowed Other Secured Claim to the extent of the value of the Holder's interests in such property; or (iii) the surrender to the Holder of the property securing such Claim.

(iii)     *Voting*: Class 3 is unimpaired and Holders of Class 3 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Claims in Class 3 are not entitled to vote to accept or reject the Plan.

(d)    *Class 4 General Unsecured Claims*

(i)    *Classification*: Class 4 consists of all Allowed General Unsecured Claims.

(ii)    *Treatment*: On the Effective Date, or as soon as practicable thereafter, the Disbursing Agent shall distribute to each Holder of an Allowed Class 4 Claim its Pro Rata share of Distributable Cash.

(iii)    *Voting*: Class 4 is impaired and Holders of Class 4 Claims are entitled to vote to accept or reject the Plan.

(e)    *Class 5 - Interests*

(i)    *Classification*: Class 5 consists of all Interests.

(ii)    *Treatment*:  On the Effective Date, all Interests shall be deemed cancelled and of no further force and effect, whether surrendered for cancellation or otherwise.

(iii)    *Voting*:  Class 5 is impaired, but because no distributions will be made to Holders of Class 5 Claims, such Holders are deemed to have rejected the Plan pursuant to 1126(g) of the Bankruptcy Code.  Therefore, the Holders of Class 5 Interests are not entitled to vote to accept or reject the Plan.

(f)    *Class 6 –Intercompany Claims*

(i)    *Classification*: Class 6 consists of all Intercompany Claims.

(ii)    *Treatment*: Holders of Class 6 Claims receive no distribution and are cancelled as of the Effective Date.

(iii)    *Voting*: Class 6 is impaired, but because no distributions will be made to Holders of Class 6 Claims nor will such Holders retain any property, such Holders are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, the Holders of Class 6 claims are not entitled to vote to accept or reject the Plan.

(g)    *Class 7 - Other Securities Claims and Interests*

(i)    *Classification*: Class 7 consists of all Other Securities Claims and Interests of whatever kind or nature.

(ii)    *Treatment*: Class 7 Claims receive no distribution and are cancelled and discharged as of the Effective Date.

(iii)    *Voting*: Class 7 is impaired, but because no distributions will be made to Holders of Class 7 Claims, such Holders are deemed to reject the Plan pursuant

to section 1126(g) of the Bankruptcy Code. Class 7 Claims are not entitled to vote to accept or reject the Plan.

      D.      <u>Special Provision Governing Unimpaired Claims</u>

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Liquidating Trust's rights in respect of any Unimpaired Claims, including, but not limited to, all rights to assert any and all legal and equitable defenses to, or setoffs or recoupments against, such Unimpaired Claims.

      E.      <u>Acceptance And Rejection Of The Plan</u>

      <u>1.</u>      <u>Voting Classes</u>

Except as otherwise provided in order(s) of the Bankruptcy Court pertaining to solicitation of votes on the Plan, Holders of Claims in Class 2 (Gateway Secured Claims) and Class 4 (General Unsecured Claims) shall be entitled to vote to accept or reject the Plan.

      <u>2.</u>      <u>Acceptance by Impaired Classes</u>

An Impaired Class of Claims will have accepted the Plan if (a) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

      <u>3.</u>      <u>Presumed Acceptance of Plan</u>

Class 1 (Priority Non-Tax Claims) and Class 3 (Other Secured Claims) are unimpaired under the Plan and therefore, are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

      <u>4.</u>      <u>Presumed Rejection of Plan</u>

Class 5 (Interests), Class 6 (Intercompany Claims) and Class 7 (Other Securities Claims and Interests) are impaired and shall receive no distributions and, therefore, are presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

      <u>5.</u>      <u>Non-Consensual Confirmation</u>

The Debtors will seek Confirmation of the Plan under section 1129(b) of the Bankruptcy Code, to the extent applicable, based on the deemed rejection by classes 5, 6 and 7. The Debtors reserve the right (a) to request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code and/or (b) to modify the Plan in accordance with section XIII thereof.

F.   Plan Implementation

1.   Limited Substantive Consolidation or Merger

*(a)     Limited Substantive Consolidation*

The Plan contemplates entry of the Confirmation Order effectuating the limited substantive consolidation of the Chapter 11 Cases of the Debtors into a single Chapter 11 Case solely for the purposes of all actions associated with confirmation and consummation of the Plan. On the Confirmation Date or such other date as may be set by Final Order of the Court, but subject to the occurrence of the Effective Date: (i) solely for the purposes of the Plan and the distributions and transactions contemplated thereby, all assets and liabilities of the Debtors shall be treated as though they were merged; (ii) any obligation of any Debtor and all guarantees thereof executed by one or more of the Debtors shall be deemed to be one obligation of the Debtors; (iii) any Claims filed or to be filed in connection with any such obligation and such guarantees shall be deemed one Claim against the Debtors; (iv) each and every Claim filed in the individual Chapter 11 Cases of any of the Debtors shall be deemed a single obligation of all of the Debtors under the Plan on and after the Confirmation Date; (v) all duplicative Claims (identical in both amount and subject matter) filed against more than one of the Debtors will be automatically expunged so that only one Claim survives against the Debtors but in no way shall such Claims be deemed Allowed by reason of this section; provided however, that the Debtors will not be deemed, for purposes of any Litigation Claims or determining the availability of the right of set-off under section 553 of the Bankruptcy Code, to be one entity, such that, subject to other provisions of section 553 of the Bankruptcy Code, the debts due to any of the Debtors may not be offset against Claims against another Debtor. The substantive consolidation provided for in this section shall not affect the obligations of each and every Debtor to pay Bankruptcy Fees to the Office of the United States Trustee that may have come due prior to the Effective Date.

Pursuant to Bankruptcy Rule 9019 and any applicable state law and as consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan effecting limited substantive consolidation of the Debtors shall constitute a good faith compromise and settlement of any Causes of Action or disputes that could be brought by a Holder of a Claim or Interest asserting that such Claim or Interest would have received more favorable treatment had substantive consolidation not been effected. This compromise and settlement is in the best interests of Holders of Claims and Interests and is fair, equitable and reasonable. Upon confirmation of the Plan, the Plan shall be approved as a settlement of all such causes of action and disputes. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of this settlement pursuant to Bankruptcy Rule 9019 and its finding that this is a good faith settlement pursuant to any applicable state laws, given and made after due notice and opportunity for hearing, and shall bar any such Cause of Action by any Holder of a Claim or Interest with respect to the matters described in this section.

*(b)     Benefits of Limited Substantive Consolidation*

The Debtors believe that limited substantive consolidation provided for by the Plan is in the best interest of the Debtors' Estates and will promote a more expeditious and streamlined distribution and recovery process for Creditors. Limited substantive consolidation will relieve the Debtors' estates from having to engage in the costly and time-consuming exercise of

litigating intercompany claims. It will also relieve the Debtors from having to litigate creditor claims against multiple Debtor entities on the same liability, as only one claim will be deemed allowed and payable from one common pool of assets. The Debtors believe that the administrative benefits of limited substantive consolidation will provide for a greater overall recovery for creditors of the Debtors' estates.

## 2. Merger as an Alternative to Substantive Consolidation

As an alternative to limited substantive consolidation, the Debtors may seek to effectuate a merger under applicable nonbankruptcy law. Upon any such substantive consolidation or merger, the Debtors will not be deemed, for purposes of any Litigation Claims or determining the availability of the right of set-off under section 553 of the Bankruptcy Code, to be one entity, such that, subject to other provisions of section 553 of the Bankruptcy Code, the debts due to any of the Debtors may not be offset against Claims against another Debtor.

## 3. The Liquidating Trust

### (a) Formation

Prior to the Effective Date, the Debtors shall continue to wind down their businesses subject to all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules. The Plan contemplates the transfer of the Debtors' Assets and liabilities into the Liquidating Trust.

On the Effective Date, or as soon as practicable thereafter, the Debtors and the Committee will form the Liquidating Trust to administer certain post-confirmation responsibilities under the Plan, including, but not necessarily limited to, those responsibilities associated with the pursuit and collection of Litigation Claims, Causes of Action, and the reconciliation and payment of Claims.

The Liquidating Trust shall be established as a Delaware common law trust, which shall also be a grantor trust for the sole purpose of liquidating the Estate and making distributions to Holders of Allowed Claims and Interests, in accordance with the Plan and Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. Subject to definitive guidance from the IRS, all parties shall treat the Liquidating Trust as a liquidating trust for all federal income tax purposes.

The Liquidating Trust Agreement shall contain provisions customary to trust agreements utilized in comparable circumstances, including, but not limited to, any and all provisions necessary to govern the rights, powers, obligations and appointment and removal of the Liquidating Trustee and to ensure the treatment of the Liquidating Trust as a liquidating trust for federal income tax purposes, all consistent with the Plan.

For all federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee and Holders of Allowed Claims and Interests) shall treat the transfer of Assets and liabilities to the Liquidating Trust, in accordance with the terms of the Plan, as a transfer to Holders of Allowed Claims and Interests followed by a transfer by such Holders to the Liquidating Trust, and the beneficiaries of the Liquidating Trust shall be treated as the grantors and owners thereof. The beneficiaries of the Liquidating Trust shall be the Holders of Allowed Claims and Interests.

The Liquidating Trust shall terminate no later than the fifth (5th) anniversary of the Effective Date; provided, however, that within a period of three (3) months prior to such termination date, the Bankruptcy Court, upon motion by a party in interest may extend the term of the Liquidating Trust if it is necessary to facilitate or complete the liquidation of the Liquidating Trust's assets. Notwithstanding the foregoing, multiple extensions can be obtained so long as Bankruptcy Court approval is obtained within three (3) months prior to the expiration of each extended term; provided, however, that the aggregate of all such extensions shall not exceed three (3) years, unless the Liquidating Trustee receives a favorable ruling from the IRS that any further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust within the meaning of Treas. Reg. § 301.7701-4(d) for federal income tax purposes.

(b)     *Assets of the Liquidating Trust*

On the Effective Date, or as soon as practicable thereafter, the Debtors shall transfer, assign and deliver to the Liquidating Trust, the Liquidating Trust Assets as specified in the Liquidating Trust Agreement.

On the Effective Date, title to all property of the Debtors' Estates will pass to and vest in the Liquidating Trust, free and clear of all Claims, interests, Liens, security interests, charges and other encumbrances (except as otherwise provided in the Plan).

The Liquidating Trust Assets shall be held by the Liquidating Trust for the beneficiaries or the Liquidating Trust subject to the terms and conditions of the Plan and the Liquidating Trust Agreement. The Liquidating Trust shall administer the D&O Policies and all policies shall cover the D&Os and the prepetition directors and officers that were previously covered by such D&O Policies. The Liquidating Trust shall maintain and prosecute, if appropriate, any and all valid Claims on behalf of the Debtors that may exist as against any prepetition director or officer of the Debtors.

(c)     *Liabilities of the Liquidating Trust*

The liabilities transferred to the Liquidating Trust shall include, but not necessarily be limited to, obligations under the Plan with respect to Priority Tax Claims, Other Priority Non-Tax Claims, Other Secured Claims, General Unsecured Claims and Administrative Claims that have not been satisfied on the Effective Date of the Plan.

On the Effective Date, or as soon as practicable thereafter, the Debtors will transfer to the Liquidating Trust all cash on hand to make the payments required on Allowed Claims pursuant to the Plan and the Liquidating Trust Agreement. In addition, the Liquidating Trust shall have available the proceeds from the prosecution of Causes of Action.

(d)     *Liquidating Trust Beneficiaries*

The beneficiaries of the Liquidating Trust are the Holders of Class 4 Claims.

(e)     *Appointment of the Liquidating Trustee and Members of the Trust Oversight Committee*

The Committee, after consultation with the Debtors, shall appoint the Liquidating Trustee who shall have the power to administer the Liquidating Trust and will be advised by the Trust Oversight Committee as specified in the Plan and the Liquidating Trust Agreement; *provided however, that, notwithstanding anything in this Plan to the contrary, if the release provisions set forth in Article XI of the Plan are not approved in their entirety in connection with Confirmation of the Plan, then the Debtors shall appoint the Liquidating Trustee and no Trust Oversight Committee shall be formed.*

If applicable, the Trust Oversight Committee shall consist of at least three members plus the Liquidating Trustee, the members of the Trust Oversight Committee shall be designed by the Committee; *provided however,* any member of the Trust Oversight Committee that is conflicted on a particular matter to be addressed by the Trust Oversight Committee shall not participate as a member of the Trust Oversight Committee with regard to such matter. Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will disclose, on or prior to the Confirmation Date, the identity and any affiliations of the Liquidating Trustee and any Person proposed to serve on the trust Oversight Committee. To the extent any such Person is an "insider" under the Bankruptcy Code, the nature of any compensation for such Person will also be disclosed.

The Debtors and the Liquidating Trustee shall enter into a Liquidating Trust Agreement to be filed with the Bankruptcy Court at least five (5) days prior to the Confirmation Hearing. On the Effective Date, the Liquidating Trustee shall succeed in all respects to all of the rights, privileges and immunities of the Debtors, including, without limitation, the attorney-client privileges, work product privilege and any other evidentiary privileges of the Debtors and shall be appointed as the sole officer of the Debtors as of the Effective Date. The Liquidating Trustee, and his successors, shall serve until the earlier of (i) the later to occur of (a) the entry of the Final Decree, (b) the dissolution of the Liquidating Trust, and (c) the payment of the final distributions to Holders of Allowed General Unsecured Claims pursuant to the Plan; or (ii) the expiration of the term of such Liquidating Trustee's employment agreement or such Liquidating Trustee's resignation, death, incapacity, removal or termination by the Trust Oversight Committee pursuant to the Liquidating Trust Agreement or order of the Bankruptcy Court. The Liquidating Trustee may also be removed by the Bankruptcy Court upon motion for good cause shown by any Creditor.

As set forth in the Plan, the liquidation and winding up of the Liquidating Trust and the Debtors shall become the responsibility of the Liquidating Trustee who shall thereafter have responsibility for the management, control and operation thereof, and who may use, acquire and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, but subject to the terms of the Plan and the Liquidating Trust Agreement.

Upon creation of the Liquidating Trust, the Liquidating Trustee shall be the trustee of the Liquidating Trust for all purposes and in all respects, with all necessary and appropriate power to act for, on behalf of and in the name of the Liquidating Trust.

(f)     *Duties of the Liquidating Trustee*

In addition to the duties as set forth elsewhere in the Plan and, the Liquidating Trustee, at the direction of and in consultation with the Trust Oversight Committee as set forth more specifically in the Liquidating Trust Agreement and herein, the Liquidating Trustee shall have the following duties:

(i)     to sell, liquidate and/or recover any and all Assets of the Debtors' Estates vested in the Liquidating Trust;

(ii)    to manage, control and operate the Liquidating Trust;

(iii)   to investigate and, if necessary and appropriate, to prosecute and enforce (or not prosecute or enforce), or to compromise, release or settle any Causes of Action on behalf of the Estate and the Liquidating Trust without further approval of or application to the Bankruptcy Court;

(iv)   to invest the Cash and other Assets of the Liquidating Trust and the Estate;

(v)    to file any and all reports, pleadings and other documents;

(vi)   to pay Allowed Claims pursuant to the Plan and to make any and all distributions required or permitted to be made under the Plan;

(vii)  to pay out of the Liquidating Trust any and all Claims, liabilities, losses, damages, costs and expenses incurred in connection therewith or as a result thereof, including all Post-Confirmation Expenses accruing from and after the Effective Date, in accordance with the Administrative Budget;

(viii) to employ, supervise and compensate any employees of the Liquidating Trust;

(ix)   to make and file tax returns for the Debtors and the Liquidating Trust;

(x)    to commence and pursue dissolution or winding up of proceedings for the Liquidating Trust;

(xi)   to request the entry of a Final Decree;

(xii)  to file, prosecute, compromise and settle objections to Claims without further approval of or application to the Bankruptcy Court, except as otherwise provided in the Plan; and

(xiii) to prepare and deliver to the Trust Oversight Committee for approval the Administrative Budget of the Liquidating Trust with respect to each six-month period following the initial Administrative Budget and any amendments or modifications thereto; and

(xiv) (xiii) to take any and all other actions necessary or appropriate to implement the Plan and the liquidation and winding up of the Debtors, the Estates and the Liquidating Trust in accordance with applicable law, provided, that nothing in the Plan shall permit the Liquidating Trustee to terminate or cancel the Debtors' director and officer

liability insurance coverage relating to the period following the Petition Date; and provided further that the Liquidating Trustee shall not renew or extend such insurance coverage, or other new or substitute coverage, without the approval of the Trust Oversight Committee.

In connection with the execution of his or her duties under the Plan, the Liquidating Trustee, at the direction of and in consultation with the trust Oversight Committee as set forth more specifically in the Liquidating Trust Agreement and the Plan, shall be authorized:

1.  to execute such documents and to take such other actions as are necessary to effectuate the Plan and perform his or her duties as liquidating agent of and for the Estate and the Liquidating Trust, including to execute such documents and take such other action on behalf of the Liquidating Trust or the Debtors;

2.  to open, close and manage bank accounts, and to enter into business transactions within or without the ordinary course of business;

3.  to authorize and benefit from any insurance policies and rights of indemnification;

4.  to retain and pay professionals (including the Debtors' or the Committee's Professionals) or other Persons to assist the Liquidating Trustee in the liquidation of the Debtors' Assets, without prior Bankruptcy Court approval, and to designate another Person to be the Disbursing Agent, if necessary;

5.  to incur any reasonable and necessary expenses (up to the amounts set forth in the Administrative Budget) in the performance of his or her duties as liquidating agent of and for the Estate and the Liquidating Trust;

6.  to compromise, release or settle any Claim or Cause of Action or to sell or dispose of any Asset; and

7.  to employ such other procedures, not inconsistent with the Plan, necessary for the Liquidating Trustee to perform his or her duties under the Plan.

The Liquidating Trustee shall be deemed the Estates' representative in accordance with Bankruptcy Code § 1123 and shall have all powers, authority and responsibilities specified in the Liquidating Trust Agreement, including, without limitation, the powers of a trustee under Bankruptcy Code sections 704 and 1106 (including, without limitation, commencing, prosecuting or settling Causes of Action and asserting claims, defenses, offsets and privileges), to the extent not inconsistent with the Plan or the status of the Liquidating Trust as a liquidating trust within the meaning of Treas. Reg. § 301.7701-4(d) for federal income tax purposes. In discharging the foregoing responsibilities, the Liquidating Trustee shall be entitled to exercise and rely upon his or her business judgment in consultation with the Trust Oversight Committee. The Liquidating Trustee shall not be obligated to take any action or to pursue any Causes of Action unless justified in his or her reasonable determination by fact and law, nor shall the Liquidating Trustee be obligated to take any action that could reasonably cause him or her personal liability. Without limiting the generality of the foregoing, the Liquidating Trustee may consider the interests of Holders of Allowed Claims in receiving prompt distributions and such other factors as may be reasonable in the exercise of his or her business judgment. Such

authorization and benefits shall also extend to any, each and every successor Liquidating Trustee, without reservation or limitation.

The Liquidation Trustee, at the direction of the Trust Oversight Committee, shall be permitted to make any investments that a liquidating trust, within the meaning of Treas. Reg. § 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise and pursuant to the investment guidelines of Bankruptcy Code §345. The Liquidating Trustee, at the direction of the Trust Oversight Committee, may expend the Cash of the Liquidating Trust (a) as reasonably necessary to meet contingent liabilities and to maintain the value of the respective assets of the Liquidating Trust during liquidation, (b) to pay the respective reasonable administrative expenses (including, but not limited to, any United States Trustee fees, Liquidating Trustee fees, professional fees, and taxes imposed on the Liquidating Trust), and (c) to satisfy other respective liabilities incurred by the Liquidating Trust in accordance with the Plan or the Liquidating Trust Agreement.

### (g)  Post Confirmation Expenses

 Prior to the Effective Date, the Committee shall approve the Administrative Budget for the six (6) month period beginning on the Effective Date for professional fees for services to be rendered to the Liquidating Trust, which Administrative Budget may be altered from time to time by the Liquidating Trustee after consultation with the Trust Oversight Committee in accordance with the Liquidating Trust Agreement provided that any fees and expenses of professionals retained by the Liquidating Trust that have been incurred prior to the date of the modification of the Administrative Budget shall constitute budgeted amounts. The Trust Oversight Committee shall approve in advance the Liquidating Trustee's retention of professionals and their compensation arrangements.

On the Effective Date, the Liquidating Trustee shall establish the Administrative Fund. The initial amount of the Administrative Fund shall be based on the Liquidating Trustee's good faith estimate of the cost necessary to complete the Liquidating Trust's obligations under the Plan and the Liquidating Trust Agreement and will include the amount budgeted for the Liquidating Trust's professionals pursuant to Article IV.I of this Plan. The Liquidating Trust shall pay all costs and expenses related to carrying out its obligations under the Plan and the Liquidating Trust Agreement from the Administrative Fund and, in the Liquidating Trustee's discretion, and with approval of the Trust Oversight Committee, may add additional amounts to the Administrative Fund to prosecute the Causes of Action or for administration and other miscellaneous needs of the Liquidating Trust without further notice or motion in accordance with the terms of the Liquidating Trust Agreement.

The reasonable and necessary fees and actual and necessary expenses of the Liquidating Trustee, the Trust Oversight Committee and the professionals retained by the Liquidating Trustee and the Trust Oversight Committee shall be paid by the Liquidating Trustee from the Liquidation Trust. The Liquidating Trustee shall provide semi-annual summaries of fees and expenses incurred by the Liquidating Trust to any party-in-interest upon request. Any disputes relating to such fees and expenses may be resolved by the Bankruptcy Court in accordance with the following procedures or such other procedures as may be set by the Liquidating Trustee: upon the submission of a fee and/or expense statement to the Liquidating Trustee and the Trust Oversight Committee, the Liquidating Trustee and the Trust Oversight Committee shall have

twenty (20) days from the delivery of a fee statement to give notice of an objection to the fee statement to the professional or Person seeking compensation or reimbursement. For an objection to be valid, it shall be in writing and set forth in detail the specific fees objected to and the basis for the objection. Any objection that remains unresolved fifteen (15) days after it is made shall be filed with the Bankruptcy Court by the objecting party, served upon the professional or Person seeking compensation or reimbursement, and heard by the Bankruptcy Court at the next regularly-scheduled omnibus hearing. The uncontested portion of each invoice shall be paid within twenty (20) days after its delivery to the Liquidating Trustee and the Trust Oversight Committee in accordance with the procedures set forth in the Liquidating Trust Agreement.

### (h)     Liability; Indemnification

The Liquidating Trustee or any other member of the Trust Oversight Committee shall not be liable for any act or omission taken or omitted to be taken in his or her capacity as Liquidating Trustee or as a member of the Trust Oversight Committee, as the case may be, other than acts or omissions resulting from the Liquidating Trustee's or Trust Oversight Committee member's willful misconduct, gross negligence or fraud. The Liquidating Trustee and the Trust Oversight Committee may, in connection with the performance of their functions, and in their sole and absolute discretion, consult with their respective attorneys, accountants, financial advisors and agents, and the Liquidating Trustee and the Trust Oversight Committee shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons other than acts or omissions resulting from the willful misconduct, gross negligence or fraud of the Liquidating Trustee or the Trust Oversight Committee, as the case may be. Notwithstanding such authority, the Liquidating Trustee and the Trust Oversight Committee shall not be under any obligation to consult with their respective attorneys, accountants, financial advisors or agents, and any determination not to do so shall not result in the imposition of liability on the Liquidating Trustee or the Trust Oversight Committee, as the case may be, and their respective designees, unless such determination is based on willful misconduct, gross negligence or fraud. The Liquidating Trust shall indemnify and hold harmless the Liquidating Trustee and his or her, the Trust Oversight Committee and their respective designees and professionals, and all duly designated agents and representatives thereof (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses (including, but not limited to, attorneys' fees and costs) arising out of or due to such actions or omissions, or consequences of their actions or omissions with respect or related to the performance of the duties of the Liquidating Trustee or the Trust Oversight Committee, as the case may be, or the implementation or administration of the Plan; *provided, however,* that no such indemnification will be available to such Persons for such actions or omissions if a court of competent jurisdiction has determined by final order that the challenged conduct occurred as a result of willful misconduct, gross negligence or fraud. Additionally, it is not a conflict for the Liquidating Trustee to retain the Committee's or Debtors' counsel or financial advisors.

### (i)     Dissolution of the Committee

Upon the Effective Date, the Committee shall dissolve automatically whereupon its members, Professionals and agents shall be released from any further duties and responsibilities in the applicable Debtor(s)' chapter 11 cases and under the Bankruptcy Code, except with respect to: (i) obligations arising under confidentiality agreements, joint interest agreements and

protective orders entered during the Chapter 11 Case which shall remain in full force and effect according to their terms; (ii) applications for Professional Fee Claims; (iii) requests for allowance and payment of Substantial Contribution Claims; and (iv) any pending motions, or any motions or other actions seeking enforcement or implementation of the provisions of the Plan or the Confirmation Order. The Committee members and the Professionals retained by the Committee shall not be entitled to compensation and reimbursement of expenses for services rendered after the Effective Date, except for services rendered in connection with applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or filed after the Effective Date.

(j)    *Trust Oversight Committee*

On the Effective Date, the Trust Oversight Committee shall have the duties set forth in the Plan to maximize distributions to Holders of Class 2 Claims and Class 4 Claims. On the applicable Effective Date, the Trust Oversight Committee shall succeed in all respects to all of the rights, privileges and immunities of the Committee, including, without limitation, the attorney-client privileges and any other evidentiary privileges of the Committee.

The Trust Oversight Committee shall have the duty to take actions in accordance with the provisions of the Plan and in furtherance of the execution of the Plan. Additionally, the Trust Oversight Committee shall have the following rights and duties:

(i)      to approve any release or indemnity in favor of any third party granted or agreed to by the Liquidating Trustee;

(ii)      to authorize the Liquidating Trustee to commence any Cause of Action or Avoidance Action;

(iii)      to approve the settlement of any Cause of Action or Avoidance Action and to approve any application by the Liquidating Trustee for an order in connection with any such settlement;

(iv)      to approve the allowance of any Disputed Claim;

(v)      to approve the sale of any Assets by the Liquidating Trustee and to approve any application by the Liquidating Trustee for an order in connection with any such sale of Assets;

(vi)      to review all financial information relating to the Liquidating Trust and the Estate, which shall be promptly provided by the Liquidating Trustee upon request by the Trust Oversight Committee;

(vii)      to review and assert objections to motions filed or claims asserted;

(viii)      to monitor distributions to creditors;

(ix)      to take such other actions as it deems necessary and appropriate with respect to the implementation of the Plan;

(x)       to approve the Liquidating Trustee's retention of professionals;

(xi)     to remove the Liquidating Trustee in accordance with the procedures in the Liquidating Trust Agreement; and

(xii)    to approve the Administrative Budget.

The duties and powers of the Trust Oversight Committee shall terminate upon the later to occur of (i) the entry of the Final Decree, (ii) the dissolution of the Liquidating Trust, and (iii) the payment of the final distributions to Holders of Allowed General Unsecured Claims pursuant to the Plan.

The Trust Oversight Committee shall have the right but shall not be required to retain counsel of its choice, and the reasonable and necessary fees and expenses of such counsel shall be paid by the Liquidating Trustee in accordance with the following procedures or such other procedures as may be set by the Liquidating Trustee: upon the submission of a fee and/or expense statement to the Liquidating Trustee and the Trust Oversight Committee, the Liquidating Trustee and the Trust Oversight Committee shall have twenty (20) days from the delivery of a fee statement to give notice of an objection to the fee statement to the professional or Person seeking compensation or reimbursement. For an objection to be valid, it shall be in writing and set forth in detail the specific fees objected to and the basis for the objection. Any objection that remains unresolved fifteen (15) days after it is made shall be filed with the Bankruptcy Court by the objecting party, served upon the professional or Person seeking compensation or reimbursement, and heard by the Bankruptcy Court at the next regularly scheduled omnibus hearing. The uncontested portion of each invoice shall be paid within twenty (20) days after its delivery to the Liquidating Trustee and the Trust Oversight Committee in accordance with the procedures set forth in the Liquidating Trust Agreement.

### (k)    (j) Corporate Action

On the Effective Date, the matters under the Plan involving or requiring corporate action of the Debtors, including, but not limited to, actions requiring a vote or other approval of the board of directors or shareholders and execution of all documentation incident to the Plan, notwithstanding any otherwise applicable non-bankruptcy law or the Organization Documents of the Debtors, shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from and after the Effective Date without any further action by the Bankruptcy Court or the officers, directors, members or shareholders, as applicable, of the Debtors.

### (l)    (k) Dissolution of the Debtors and the Liquidating Trust

Immediately after the Effective Date, the Liquidating Trustee shall be authorized to take, in consultation with and with direction of the Trust Oversight Committee, all actions reasonably necessary to dissolve the Debtors under applicable laws, including without limitation under the laws of the jurisdiction in which the Debtors may be organized or registered, and to pay all reasonable costs and expenses in connection with such dissolution, including the costs of preparing or filing any necessary paperwork or documentation; provided, however, that the Liquidating Trustee shall not be compelled to dissolve the Debtors if to do so would unduly

burden the Liquidating Trust and no assets shall revest in the Debtors. Whether or not dissolved, immediately after the Effective Date, the Debtors shall have no authorization to implement the provisions of the Plan, unless specifically provided for in the Plan.

### _(m)_     _(l)_ Good Faith

The Liquidating Trustee and Trust Oversight Committee shall act in good faith in carrying out its duties and responsibilities and use its best efforts to liquidate and resolve Claims, disputes and maximize the value of the Liquidating Trust's assets and minimize claims against the Liquidating Trust.

### _(n)_     _(m)_ Saturday, Sunday, or Legal Holiday

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### _(o)_     _(n)_ Issuance of Documents Necessary to Consummate the Plan

On or as soon as practicable after the Effective Date, the Debtors shall execute and deliver such other agreements, documents and instruments, as is necessary to effectuate the Plan.

### _(o)_     Continued Assistance

David A. Young, a post-petition officer of the Debtors, shall reasonably provide continued assistance to the Liquidating Trust subsequent to the Effective Date under terms and conditions equivalent to those in effect prior to the Effective Date or under such other terms as may be agreed to by Mr. Young and the Liquidating Trustee.

### 4.     Maintenance and Preservation of Causes of Action

### (a)     Maintenance of Causes of Action

Except as otherwise provided in the Plan, the Liquidating Trust shall retain all rights on behalf of the Debtors and the Estates to commence and pursue, as appropriate, in any court or other tribunal including, without limitation, in an adversary proceeding filed in one or more of the Debtors' Chapter 11 Cases, any and all Causes of Action, whether such Causes of Action accrued before or after the Petition Date, including, but not limited to, the actions specified in the Plan.

Except as otherwise provided in the Plan, in accordance with section 1123(b)(3) of the Bankruptcy Code, any Claims, rights, and Causes of Action that the respective Debtors, and the Liquidating Trust may hold against any Person shall vest in the Liquidating Trust. The Liquidating Trust shall retain and may exclusively enforce any and all such Claims, rights or Causes of Action, and commence, pursue and settle the Causes of Action in accordance with the Plan, subject to the advice of counsel and the consent of the Trust Oversight Committee. The Liquidating Trust shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such claims, rights, and Causes of Action without the

consent or approval of any third party and without any further order of court subject to the advice of counsel and the consent of the Trust Oversight Committee as required by the Liquidating Trust Agreement.

### *(b)* *Preservation of Causes of Action*

Except as otherwise expressly provided in the Plan, from and after the Effective Date, the Liquidating Trust and the Liquidating Trustee, subject to any approval of the Trust Oversight Committee as set forth in Article IV of the Plan, may litigate or settle any Avoidance Action, recovery or subordination actions under Bankruptcy Code §§ 502, 510, 522(f), 522(h), 542, 543, 544, 545, 547, 548, 549, 550, 551, 553 or 724 or any other Causes of Action or rights to payments or claims that belong to the Debtors, including but not limited to any Causes of Action for which an agreement regarding the tolling of applicable statute(s) of limitations was entered into prior to the Effective Date. Pursuant to Bankruptcy Code § 1123(b)(3)(B), no other Person may pursue any such Avoidance Actions, recovery or subordination actions or other Causes of Action that belong to the Debtors, unless otherwise provided by order of the Court.

The Liquidating Trust and the Liquidating Trustee may also investigate, commence, pursue and settle, without limitation, the following potential Causes of Action after the Effective Date:

- All actual or potential avoidance actions pursuant to any applicable section of the Bankruptcy Code including, without limitation, sections 502, 510, 522(f), 522(h), 542, 543, 544, 545, 547, 548, 549, 550, 551, 553 or 724 of the Bankruptcy Code, arising from any transaction involving or concerning the Debtors;

- All actual or potential actions, whether legal, equitable or statutory in nature, for, or in any way involving, the collection of accounts receivable or general ledger items that are due and owing to the Debtors, including without limitation trade receivables, rent and other lease and sublease charges, franchise and/or license fees, payments due under equipment leases and licenses, other miscellaneous charges, and principal and interest on promissory notes by any Person or Entity (collectively, the "Accounts Receivable");

- All actual actions or potential actions, whether legal, equitable or statutory in nature, against customers, for Accounts Receivable, improper setoff, overpayment, or any other claim arising out of the customer relationship;

- All actual actions or potential actions, whether legal, equitable or statutory in nature, against vendors, for overpayment, improper setoff, warranty, indemnity, retention of double payments, retention of misdirected wires, deductions owing or improper deductions taken, claims for damages arising out of a military distribution relationship, claims for overpayment of drop-ship-delivery amounts, or any other claim arising out of the vendor relationship;

- All actual actions or potential actions against vendors for violation of the Trade Agreements or as set forth in the First Day Orders. The Debtors are still investigating which vendors they have actions against;

- All actual or potential actions, whether legal, equitable or statutory in nature, against Persons or Entities including vendors with respect to prepetition violations of applicable federal or state securities laws;

- All actual or potential breach of contract actions against any customers, vendors or Entities who violated the automatic stay after the Petition Date;

- All actual or potential actions, whether legal, equitable or statutory in nature, against landlords, lessees, sublessees, or assignees arising from various leases, subleases and assignment agreements relating thereto, including, without limitation, actions for unpaid rent, overcharges relating to taxes, common area maintenance and other similar charges;

- All actual or potential actions, whether legal, equitable or statutory in nature, against the Debtors' current or former insurance carriers to recover unpaid reimbursements and claims, overpayment of premiums and fees, claims for breach of contract, indemnity obligations or coverage or similar Causes of Action;

- All actual or potential Causes of Actions, whether legal, equitable or statutory in nature, against purchasers of assets from the Debtors relating to breach of the purchase agreement or unpaid compensation thereunder;

- Any and all rights to payment against any taxing authority for any tax refunds, credits, overpayments or offsets that may be due and owing to the Debtors for taxes that the Debtors may have paid to any such taxing authority;

- All actions or potential actions, whether legal, equitable or statutory in nature, relating to deposits or other amounts owed by any creditor, lessor utility, supplier, vendor, landlord, sub-lessee, assignee or other Person or Entity;

- All actions or potential actions, whether legal, equitable or statutory in nature, relating to environmental and product liability matters;

- ~~Any litigation or lawsuit initiated by any of the Debtors that is currently pending, whether in the Bankruptcy Court, before the American Arbitration Association, or any other court or tribunal or initiated against the Debtors after the Petition Date for which the Debtors may have counterclaims or other~~All actions or potential actions, whether legal, equitable or statutory in nature, arising out of, or relating to, the Debtors' intellectual property rights;

- Potential actions against any ~~current or former~~of the prepetition directors, officers, employees, attorneys, financial advisors, accountants, investment bankers, agents and representatives of the Debtors, except actions against the Releasees for

breaches of fiduciary duty, negligent mismanagement, wasting of corporate assets, and diversion of corporate opportunity;

- All actual or potential actions, whether legal, equitable or statutory in nature, against all Persons, except actions against the Releasees, arising out of, or in connection with, any of the Debtors' prepetition management, operation and/or reporting of financial or other information;

- All actions or potential actions, whether legal, equitable or statutory in nature, against any of the Debtors' current or former professionals, except actions against the Releasees, for breach of fiduciary duty, breach of contract, negligence or professional misconduct malpractice, or other tortious conduct;

- All rights against any shareholders or others for subordination of their Claims pursuant to section 510(b) of the Bankruptcy Code or against any Person that has agreed to subordination of their claim pursuant to section 510(a) of the Bankruptcy Code; ~~and~~

- All actions or potential actions against the prepetition members of the Debtors' board of directors and/or officers, except actions against the Releasees, including, without limitation, the right to equitably subordinate claims held by such directors and officers pursuant to section 510(c) of the Bankruptcy Code;

- All actual or potential actions, whether legal, equitable or statutory in nature, to recover amounts improperly awarded to employees, except actions against the Releasees, under the terms of any prepetition employment or change-in-control agreement or bonus arrangement;

- All actual or potential contract and tort actions that may exist or may subsequently arise; and

- All actual or potential actions whether legal, equitable or statutory in nature, arising out of, or in connection with the Debtors' business or operations, except actions against the Releasees.

The Debtors believe that all meritorious Avoidance Action and Causes of Action for collection of outstanding accounts receivable that are likely to yield a recovery for the Debtors' estates have been commenced. However, the Liquidating Trustee shall perform an independent investigation regarding whether any potential Claim or Cause of Action shall be investigated or pursued. It is possible that there may be other Causes of Action which currently exist or may subsequently arise that are not set forth herein or in the Plan, because the facts upon which such Causes of Action are based are not fully or currently known by the Debtors and, as a result, cannot be specifically referred to herein or in the Plan (collectively, the "Unknown Causes of Action"). The failure to list any such Unknown Causes of Action herein or in the Plan (except as to Releasees) is not intended to limit the rights of the Liquidating Trust to pursue any Unknown Cause of Action to the extent the facts underlying such Unknown Cause of Action become fully known to the Debtors or the Liquidating Trustee.

Unless a Claim or Cause of Action against a Creditor or other Person is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order, the Debtors expressly reserve such Claim or Cause of Action for later adjudication by the Liquidating Trust, (including, without limitation, Unknown Causes of Action), and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such Claims or Causes of Action upon or after the Confirmation Date or Effective Date of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except where such Claims or Causes of Action have been released in the Plan or other Final Order. In addition, the Debtors, the Liquidating Trust and any successor entities under the Plan expressly reserve the right to pursue or adopt any Claim alleged in any lawsuit in which the Debtors are defendants or an interested party, against any Person or Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

Any Person to whom the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who has received services from Debtors or a transfer of money or property from the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors should assume that such obligation, transfer, or transaction may be reviewed by the Liquidating Trust, as applicable, subsequent to the Effective Date and may, if appropriate, be the subject of an action after the Effective Date, whether or not (i) such Entity has filed a proof of Claim against the Debtors in these Bankruptcy Cases; (ii) such Creditor's proof of Claim has been objected to; (iii) such Creditor's Claim was included in the Debtors' Schedules; or (iv) such Creditor's scheduled Claim has been objected to by the Debtors or has been identified by the Debtors as disputed, contingent, or unliquidated.

5.    Funding of the Plan

All Cash necessary for the Liquidating Trust to make payments pursuant to the Plan will be obtained from the Debtors' existing Cash balances, Liquidation Proceeds and the Litigation Claims. Unless otherwise specified in the Plan, cash payments to be made pursuant to the Plan will be made by the Liquidating Trust.

E.    Executory Contracts

1.    Assumption/Rejection of Executory Contracts and Unexpired Leases

No later than twenty (20) days prior to the Confirmation Hearing, the Debtors shall file the Assumption Schedule and shall serve the Assumption Schedule on the counterparties to any contract listed on the Assumption Schedule. Objections to any proposed cure payment must be filed and served no later than the Assumption Objection Deadline and shall be adjudicated, if necessary, at the Confirmation Hearing. Any non-debtor party or Person to an Executory Contract listed on the Assumption Schedule that has not filed an objection with the Bankruptcy Court on or before the applicable Assumption Objection Deadline shall be deemed to have waived its right to dispute the cure amount. All unpaid cure payments under any Executory

Contract that is assumed or assumed and assigned under the Plan shall be made by the Liquidating Trustee as soon as practicable after the Effective Date but not later than thirty (30) days after the Effective Date, provided that in the event there is a dispute regarding the amount of any cure payment, the Liquidating Trustee shall make such cure payment as may be required by Bankruptcy Code § 365(b)(1) within ten (10) days following the entry of a Final Order resolving such dispute.

The Debtors reserve the right to remove any Executory Contract from the Assumption Schedule at any time prior to the Confirmation Hearing.

2.  Claims Based on Rejection of Executory Contracts or Unexpired Leases

On the Confirmation Date, except for (i) any Executory Contract that was previously assumed or rejected by an order of the Bankruptcy Court pursuant to Bankruptcy Code § 365, and (ii) any Executory Contract identified on the Assumption Schedule, each Executory Contract that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to Bankruptcy Code §§ 365 and 1123, effective as of the Confirmation Date. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejection pursuant to Bankruptcy Code §§ 365 and 1123 as of the Confirmation Date.

3.  Rejection Damages Bar Date

Except to the extent another Bar Date applies pursuant to an order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts under the Plan must be filed with the Court, and a copy served on counsel for the Debtors and the Liquidating Trustee, within thirty (30) days of the Effective Date, or such Claim shall be forever barred and shall not be entitled to a distribution or be enforceable against the Debtors, its Estate, the Liquidating Trust, the Liquidating Trustee, their successors, their assigns or their Assets. Any Claim arising from the rejection of an Executory Contract shall be treated as a Claim in Class 4 (General Unsecured Claims). Nothing in the Plan extends or modifies any previously applicable Bar Date.

4.  Cure of Default for Executory Contracts and Unexpired Leases Assumed

Any monetary amounts by which each executory contract and unexpired lease to be assumed pursuant to the Plan is in default shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash as soon as practicable after the Effective Date or on such other terms as the parties to such executory contracts or unexpired leases may otherwise agree. In the event of a dispute regarding: (i) the amount of any cure payments, (ii) the ability of the applicable assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (iii) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption.

5.  Compensation and Benefit Programs

Except as otherwise expressly provided in the Plan, all employment and severance agreements and policies, and all compensation and benefit plans, policies, and programs of the Debtors applicable to their employees, former employees, retirees and non-employee directors and the employees, former employees and retirees of their subsidiaries, including, without limitation, all savings plans, retirement plans, health care plans, disability plans, severance benefit agreements and plans, incentive plans, deferred compensation plans and life, accidental death and dismemberment insurance plans (the "Company Benefit Plans") shall be terminated, or shall be treated as executory contracts under the Plan, on the Effective Date and any such remaining Company Benefit Plans that have not been terminated will be deemed rejected pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code.

## 6. Insurance Policies and Insured Claims

To the extent any or all of the insurance policies of the Debtors, as may be identified in a Plan Supplement filed with the Court, are considered to be Executory Contracts, then notwithstanding anything contained in the Plan to the contrary, the Plan shall constitute a motion to assume the insurance policies identified therein. Subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute approval of such assumption pursuant to Bankruptcy Code § 365(a) and a finding by the Bankruptcy Court that each such assumption is in the best interest of the Debtors, the Estates and all parties in interest in this Chapter 11 Case. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such insurance policy identified in the Assumption Schedule. To the extent the Bankruptcy Court determines otherwise with respect to any insurance policy, the Debtors reserve the right to seek rejection of such insurance policy or other available relief. The Plan shall not affect contracts that have been assumed and assigned by order of the Bankruptcy Court prior to the Confirmation Date. For the avoidance of doubt, the certain insurance policies (including any insurance policies that are not executory contracts, insurance policies that may have expired prior to the Petition Date, insurance policies in existence on the Petition Date and insurance policies entered into by the Debtors after the Petition Date) of the Debtors identified in the Assumption Schedule and all rights thereunder and rights under any other insurance policies under which the Debtors may be beneficiaries (including the rights to make, amend, prosecute and benefit from claims) are retained and will be transferred to the Liquidating Trust pursuant to the Plan. Notwithstanding anything herein to the contrary, the D&Os shall be entitled to any insurance coverage under the Debtors' directors and officers insurance policies to pay claims against the D&Os.

The Debtors intentions with respect to the following contracts, to the extent they are executory are as follows:

1. Directors and Officers Related Insurance Coverage: The Debtors will assume all of the D&O Policies.

2. Casualty Insurance Program: An Allowed Claim partially covered by the Casualty Insurance Program shall be treated as a Class 4 General Unsecured Claim to the extent not otherwise covered by the Casualty Insurance Program.

F.     Distributions

1.     Disbursing Agent

(a)     *Liquidating Trustee as Disbursing Agent*

The Liquidating Trustee shall be the Disbursing Agent, and the Disbursing Agent shall make all distributions under the Plan.

(b)     *Alternative Disbursing Agent Qualification*

~~Any alternative or replacement liquidating trustee shall be selected by the existing Liquidating Trustee or, in the case of death or incapacity of the Liquidating Trustee, by the Bankruptcy Court upon motion by a party-in-interest.~~ No Person other than the Liquidating Trustee shall be authorized by the Bankruptcy Court to serve as Disbursing Agent unless and until the Trust Oversight Committee consents in writing to that Person serving as Disbursing Agent, and that Person (i) executes and files a statement with the Bankruptcy Court agreeing to perform all of the duties of the Disbursing Agent under the Plan, and (ii) consents to the jurisdiction of the Bankruptcy Court in respect to all matters relating to the performance of his or her duties as the Disbursing Agent under the Plan or order of the Bankruptcy Court. ~~Any party-in-interest wishing to challenge the designation of an alternative or replacement liquidating trustee may file an objection to the designation and request a hearing by the Bankruptcy Court.~~

2.     Time and Manner of Distributions

The Disbursing Agent shall make Initial Distributions under the Plan on account of Claims Allowed on the Effective Date or as soon as practicable after the Effective Date, except as otherwise ~~ordered by~~ agreed to by the Trust Oversight Committee or by order of the Bankruptcy Court. The Disbursing Agent shall have the power, subject to Trust Oversight Committee consent, to make interim distributions to Holders of Allowed General Unsecured Claims if the Liquidating Trustee determines that such interim distributions are warranted and economical. If the Liquidating Trustee determines to make interim distributions to Holders of Allowed General Unsecured Claims, the Liquidating Trustee will determine the amount to be distributed by taking into account such factors as ongoing expenses and costs, taxes and reserves necessary to provide for the resolution of Disputed Claims. Amounts withheld will be placed in an interest-bearing account approved by the Trust Oversight Committee, which shall fund ongoing expenses and costs relating to such reserves, including, without limitation, taxes in respect of Disputed Claims, if any.

At the option of the Disbursing Agent, any distributions under the Plan may be made either in Cash, by check drawn on a domestic bank, by wire transfer or by ACH. Notwithstanding any other provisions of the Plan to the contrary, no payment of fractional cents will be made under the Plan. Cash will be issued to Holders entitled to receive a distribution of Cash in whole cents (rounded to the nearest whole cent when and as necessary). Any distribution of less than $50.00 will be considered de minimis, and Holders of Allowed Claims that are entitled to any distribution of less than $50.00 will not receive any distribution unless and until the aggregate of such distributions exceed $50.00. Such undistributed funds shall

remain with and vest in the Liquidating Trust for distribution to other Holders of Allowed Claims.

    3.   Interest on Claims

    Except as otherwise specifically provided for in the Plan or in the Confirmation Order, or required by applicable bankruptcy law, post-petition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

    4.   Compliance with Tax Requirements/Allocations

    In connection with the Plan, to the extent applicable, the Liquidating Trust shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. For tax purposes, distributions received in respect of Allowed Claims will be allocated first to the principal amount of Allowed Claims with any excess allocated, if applicable, to unpaid interest that accrued on such Claims.

    5.   Delivery of Distributions and Undeliverable or Unclaimed Distributions

    *(a)*  *Delivery of Distributions in General*

    Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be made by the Disbursing Agent (i) at the addresses set forth on the Proofs of Claim or Interest filed by such Holder (or at the last known address of such Holder if no motion requesting payment or Proof of Claim or Interest is filed or the Debtors and the Liquidating Trust have been notified in writing of a change of address), (ii) at the addresses set forth in any written notices of address changes delivered to the Liquidating Trustee after the date of any related Proof of Claim or Interest, or (iii) at the addresses reflected in the Schedules if no Proof of Claim or Interest has been filed and the Liquidating Trustee has not received a written notice of a change of address.

    *(b)*  *Undeliverable Distributions*

      (i)  Holding of Undeliverable Distributions.

    If any distribution to a Holder of an Allowed Claim is returned as undeliverable, no further distributions shall be made to such Holder unless and until notification in writing of such Holder's then-current address is provided. Undeliverable distributions shall be returned and shall remain in the possession of the Liquidating Trust until such time as a distribution becomes deliverable. Undeliverable distributions shall not be entitled to any interest, dividends or other accruals of any kind. As soon as reasonably practicable, the Liquidating Trust shall make all distributions that become deliverable.

      (ii)  Failure to Claim Undeliverable Distributions.

    Any Holder of an Allowed Claim (irrespective of when a Claim became an Allowed Claim) that does not assert a Claim pursuant hereto for an undeliverable distribution (regardless

of when not deliverable) within ~~six months~~ninety (90) days after the distribution has been attempted to be made to the Holder of the Allowed Claim shall have its Claim related to such undeliverable distribution discharged and shall be forever barred from asserting any such Claim against any Liquidating Trust or being entitled to any further distribution. In such cases any Cash held for distribution on account of such Claims shall be the property of the Liquidating Trust free of any such Claim. Nothing contained in the Plan shall require the Liquidating Trust or any interested party to attempt to locate any Holder of an Allowed Claim.

      G.    Resolution of Disputed Claims

          1.    Reservation of Rights to Object to Claims

Unless a Claim or Interest is expressly described as an Allowed Claim or Interest pursuant to or under the Plan, or otherwise becomes an Allowed Claim or Interest prior to or after the Effective Date, the Liquidating Trust and the Liquidating Trustee (on behalf of the Estate) reserve any and all objections to any and all Claims and Interests and motions or requests for the payment of Claims or Interests, whether administrative expense, priority, secured or unsecured, including, without limitation, any and all objections to the validity or amount of any and all alleged Administrative Claims, Priority Tax Claims, Priority Claims, Secured Claims, General Unsecured Claims, Interest Related Claims, Interests, Liens and security interests, whether under the Bankruptcy Code, other applicable law or contract. The Liquidating Trust's and/or the Liquidating Trustee's failure to object to any Claim or Interest in the Chapter 11 Case shall be without prejudice to the Liquidating Trust's and the Liquidating Trustee's rights to contest or otherwise defend against such Claim or Interest in the Bankruptcy Court when and if such Claim or Interest is sought to be enforced by the Holder of such Claim or Interest.

2.    Objections to Claims

The Liquidating Trustee, at the direction of and in consultation with the Trust Oversight Committee as set forth in the Liquidating Trust Agreement, shall be responsible for administering, disputing, objecting to, compromising or otherwise resolving and making distributions, if any, with respect to all Claims and Interests. Unless otherwise provided in the Plan or by order of the Bankruptcy Court, any objections to Claims or Interests by the Liquidating Trustee will be filed and served not later than the Objection Deadline. In addition, the Liquidating Trust or the Liquidating Trustee may request (and the Bankruptcy Court may grant) an extension of such deadline by filing an ex parte motion with the Bankruptcy Court, based upon a reasonable exercise of his or her business judgment. A motion seeking to extend the deadline to object to any Claim or Interest shall not be deemed an amendment to the Plan.

3.    Filing of Objections

An objection to a Claim or Interest shall be deemed properly served on the Holder of such Claim or Interest if the Liquidating Trust or the Liquidating Trustee effect service by any of the following methods: (i) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004; (ii) to the extent counsel for such Holder is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or Interest or other representative identified on the Proof of Claim or Interest or any attachment thereto; or (iii) by first class mail, postage prepaid, on any counsel that has appeared on the behalf of such Holder in the Chapter 11 Case.

4.    Determination of Claims

Any Claim as to which a Proof of Claim or Interests or motion or request for payment was timely filed in the Chapter 11 Case may be determined and liquidated pursuant to (i) an order of the Bankruptcy Court, (ii) applicable bankruptcy law, (iii) agreement of the parties, (iv) applicable non-bankruptcy law, or (v) the lack of (a) an objection to such Claim or Interest, (b) an application to equitably subordinate such Claim, and (c) an application to otherwise limit recovery with respect to such Claim or Interest, filed by the Debtors, the Liquidating Trust or the Liquidating Trustee on or prior to any applicable deadline for filing such objection or application with respect to such Claim or Interest. Any such Claim or Interest determined to be Allowed, shall be deemed to be an Allowed Claim for such liquidated amount (so long as such determination has not been stayed, reversed or amended and as to which determination (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending) and shall be satisfied in accordance with the Plan. Nothing contained in the Plan shall constitute or be deemed a waiver of any Claim, right or Cause of Action that the Debtors or the Liquidating Trustee may have against any Person in connection with or arising out of any Claim or Claims, including, without limitation, any rights under 28 U.S.C. § 157.

5.    Allowance and Disallowance of Claims Subject to Bankruptcy Code § 502

Allowance and disallowance of Claims shall be in all respects subject to the provisions of Bankruptcy Code § 502, including, without limitation, subsections (b), (d), (e), (g), (h) and (i) thereof.

H.  Procedures for Treating and Resolving Disputed and Contingent Claims or Interests

1.  No Distributions Pending Allowance

No payments or distributions will be made with respect to all or any portion of a Disputed Claim or Interest unless and until all objections to such Disputed Claim or Interest have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim or Interest has become an Allowed Claim or Interest; provided, however, that in the event that only a portion of such Claim or Interest is an Allowed Claim or Interest, the Disbursing Agent may make, in his or her discretion, a distribution pursuant to the Plan on account of the portion of such Claim or Interest that becomes an Allowed Claim or Interest.

2.  Claim Estimation

The Liquidating Trustee may request estimation or liquidation of any Disputed Claim that is contingent or unliquidated pursuant to Bankruptcy Code § 502(c); provided, however, that the Bankruptcy Court shall determine (i) whether such Disputed Claim is subject to estimation pursuant to Bankruptcy Code § 502(c), and (ii) the timing and procedures for such estimation proceedings, if any.

I.  Setoffs and Recoupment

The Liquidating Trustee may, pursuant to Bankruptcy Code § 558 or applicable non-bankruptcy law, but shall not be required to, setoff against or recoup from any Claim on which payments are to be made pursuant to the Plan, any claims or Causes of Action of any nature whatsoever the Debtors may have against the Holder of such Claim; provided, however, that neither the failure to effect such setoff or recoupment nor the allowance of any Claim shall constitute a waiver or release by the Debtors of any setoff or recoupment the Debtors may have against the Holder of such Claim, nor of any other claim or Cause of Action.

J.  Cancellation of Instruments and Agreements

Upon the occurrence of the Effective Date, except as otherwise provided in the Plan, all promissory notes, shares, certificates, instruments, indentures, stock or agreements evidencing, giving rise to or governing any Claim or Interest shall be deemed canceled and annulled without further act or action under any applicable agreement, law, regulation, order or rule; the obligations of the Debtors under such promissory notes, share certificates, instruments, indentures or agreements shall be discharged and the Holders thereof shall have no rights against the Debtors, the Estates, the Liquidating Trustee, the Trust Oversight Committee and/or the Liquidating Trust; and such promissory notes, share certificates, instruments, indentures or agreements shall evidence no such rights, except the right to receive the distributions provided for in the Plan.

K.  Withholding Taxes

The Liquidating Trustee shall be entitled to deduct any federal, state or local withholding taxes from any payments under the Plan. As a condition to making any distribution under the

Plan, the Liquidating Trustee may require that the Holder of an Allowed Claim provide such Holder's taxpayer identification number and such other information and certification as the Liquidating Trustee may deem necessary to comply with applicable tax reporting and withholding laws.

L.      Reports

From the Effective Date, until a Final Decree is entered, the Liquidating Trustee shall submit quarterly reports to the United States Trustee setting forth all receipts and disbursements of the Liquidating Trust as required by the United States Trustee guidelines.

M.      Distribution Record Date

As of the close of business on the applicable Distribution Record Date, the transfer register for all Claims maintained by the Debtors or their agents, shall be closed, and there shall be no further changes in the Record Holders of any such Claims. Moreover, the Liquidating Trust shall have no obligation to recognize the transfer of any such Claims occurring after the applicable Distribution Record Date and shall be entitled for all purposes to recognize and deal only with those Holders of record as of the close of business on the applicable Distribution Record Date.

N.      Timing and Calculation of Amounts to be Distributed

Except as otherwise provided in the Plan, on the Effective Date or as soon as practicable thereafter, each Holder of an Allowed Claim against the Debtors shall receive the distributions that the Plan provides for Allowed Claims in the applicable Class, provided however, the Liquidating Trust shall maintain reserve accounts in trust for the payment or distribution on account of potential or Disputed Claims and shall make the appropriate adjustments in distributions to adequately take into consideration and fund such reserve accounts. The Liquidating Trust shall be authorized to make interim distributions and any subsequent distributions necessary to distribute any Cash, or other consideration held in any reserve account to the appropriate Claim Holder as Claims are resolved and Allowed and reserves are reduced in accordance with the Plan.

O.      Settlement of Claims and Controversies

Pursuant to Fed. R. Bankr. P. 9019 and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of claims and/or controversies relating to the contractual, legal and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim, or any distribution to be made on account of any such Allowed Claim.

P.      Retention of Jurisdiction

The Plan shall not in any way limit the Bankruptcy Court's post-confirmation jurisdiction as provided under the Bankruptcy Code. Pursuant to Bankruptcy Code §§ 105(a) and 1142, the Bankruptcy Court shall retain and have exclusive jurisdiction (to the extent granted by applicable law, including any provisions permitting mandatory or discretionary withdrawal of such

jurisdiction) over any matter arising out of or related to the Chapter 11 Case and the Plan, including, without limitation, the following:

1.    All matters relating to the assumption or rejection or the assumption and assignment of Executory Contracts or unexpired leases, or Claims or disputes relating thereto;

2.    All matters relating to the ownership of a Claim or Interest;

3.    All matters relating to the distribution to holders of Allowed Claims and Interests and to the determination of Claims and Interests;

4.    Any and all matters involving the Liquidating Trustee and/or the Liquidating Trust and/or the Trust Oversight Committee;

5.    All matters relating to or arising in connection with the disallowance, allowance or estimation of Claims or Interests filed, both before and after the Confirmation Date, including any objections to the classification of any Claim or Interest;

6.    To enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified and/or vacated;

7.    All matters relating to the construction and implementation of the Plan and the provisions thereof, and to hear and determine all requests for orders in aid of execution, implementation or consummation of the Plan;

8.    All matters relating to disputes arising in connection with the interpretation, implementation or enforcement of the Plan or the Confirmation Order, including disputes involving any injunction and exculpation provisions of the Plan, and disputes arising under agreements, documents or instruments executed in connection with the Plan;

9.    To consider any modifications of the Plan, to cure any defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

10.   All applications for allowance of compensation and reimbursement of Professional Fee Claims under the Plan or under Bankruptcy Code §§ 328, 330, 331, 503(b), 1103 and 1129(a)(4);

11.   To hear and determine all motions requesting allowance of an Administrative Claim;

12.   To determine requests for the payment of Claims entitled to priority under Bankruptcy Code § 507(a)(2), including compensation and reimbursement of expenses of parties entitled thereto;

13.   All Causes of Action, Avoidance Actions and other suits and adversary proceedings to recover assets of the Liquidating Trust, as successor-in-interest to the Debtors and property of the Estates, wherever located, and to adjudicate any and all other Causes of Action, Avoidance Actions, suits, adversary proceedings, motions, applications and contested matters

that may be commenced or maintained pursuant to the chapter 11 Cases or the Plan, proceedings to adjudicate the allowance of Disputed Claims and Interests, and all controversies and issues arising from or relating to any of the foregoing;

14.　　All matters concerning state, local and federal taxes in accordance with Bankruptcy Code §§ 346, 505 and 1146;

15.　　Any other matter to the extent such jurisdiction is consistent with the Bankruptcy Code;

16.　　All disputes involving the existence, nature or scope of the Confirmation Order, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program;

17.　　To enter the Final Decree closing the Chapter 11 Case; and

18.　　To enforce all orders previously entered by the Bankruptcy Court.

Q.　　Release, Injunctive And Related Provisions

1.　　Injunction

Except as otherwise expressly provided in the Plan or in the Confirmation Order, and except in connection with the enforcement of the terms of the Plan or any documents provided for or contemplated in the Plan, all entities who have held, hold or may hold Claims against or Interests in the Debtors or the Estate that arose prior to the Effective Date are permanently enjoined from: (i) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtors, the Liquidating Trust, the Liquidating Trustee or any property of the Debtors, the Liquidating Trust or the Liquidating Trustee with respect to any such Claim or Interest; (ii) the enforcement, attachment, collection or recovery by any manner or means, directly or indirectly, of any judgment, award, decree or order against the Debtors, the Liquidating Trust, the Liquidating Trustee, or any property of the Debtors, the Liquidating Trust or the Liquidating Trustee with respect to any such Claim or Interest; (iii) creating, perfecting or enforcing, directly or indirectly, any lien or encumbrance of any kind against the Debtors, the Liquidating Trust, the Liquidating Trustee or any property of the Debtors, the Liquidating Trust or the Liquidating Trustee with respect to any such Claim or Interest; (iv) effecting, directly or indirectly, any setoff or recoupment of any kind against any obligation due to the Debtors, the Liquidating Trust, the Liquidating Trustee or any property of the Debtors, the Liquidating Trust or the Liquidating Trustee with respect to any such Claim or Interest, unless approved by the Bankruptcy Court; and (v) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Interest. Nothing contained in the Plan shall prohibit the Holder of a Disputed Claim or Interest from litigating its right to seek to have such Disputed Claim or Interest declared an Allowed Claim and paid in accordance with the distribution provisions of the Plan, or enjoin or prohibit the enforcement by the Holder of such Disputed Claim of any of the obligations of the Debtors, the Liquidating Trustee or the Liquidating Trust under the Plan. The Confirmation Order shall also constitute an injunction enjoining any Person from enforcing or attempting to enforce any claim or cause of action against the Debtors or any property of the Debtors based on,

arising from or related to any failure to pay, or make provision for payment of, any amount payable with respect to any Priority Tax Claim on which the payments due under the Plan have been made or are not yet due under the Plan.

### 2. Term of Injunctions or Stays

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Case under Bankruptcy Code §§ 105 or 362, the Plan or otherwise, and extant on the Confirmation Date, shall remain in full force and effect until the later of (i) entry of the Final Decree or (ii) the dissolution of the Liquidating Trust.

### 3. Exculpation and Mutual Release by Releasees

Except to the extent of (i) claims held by any of the members of the Committee in their capacity as individual creditors and all applicable rights of set off, recoupment or other similar defenses that can be asserted in connection therewith, and (ii) claims, causes of action or other rights held by Debtors against any of the Committee members in their individual capacities and all applicable rights of set off, recoupment or other similar defenses that can be asserted in connection therewith, on and after the Effective Date, for good and valuable consideration, including the services of the Releasees to facilitate the expeditious liquidation of the Debtors and the implementation of this Plan, each of the Releasees, in good faith, shall be deemed to have unconditionally released one another from any and all Claims, obligations, rights, suits, damages, remedies and liabilities whatsoever, including any Claims that could be asserted on behalf of or against any of the Debtors (except that claims for Professional Fees shall not be released), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Releasees or their subsidiaries would have been legally entitled to assert in their own right, based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date (including, without limitation, claims concerning the formulation, negotiation and/or pursuit of confirmation of this Plan, the consummation of this Plan, the administration of this Plan and/or the property to be distributed under this Plan), except for cases of willful misconduct or fraud in each case subject to determination of such by final order of a court of competent jurisdiction. To the extent that any of the Releasee(s) are jointly and/or severally or otherwise liable with or to any Entity(ies) that are not Releasees ("Non-Releasee(s)") for any amounts, the amounts recoverable against the Non-Releasee(s) shall be reduced by the greater of (a) any amount paid for such Releasee(s)' release and (b) the pro rata share(s) of fault attributable to any Releasee(s). Without limiting the generality of the foregoing, all Releasees shall be entitled to and granted the protections and benefits of Bankruptcy Code § 1125(e) to the extent of any rights of contribution.

### 3. 4. Rights Limited as Set Forth in Plan; Termination of Interests

Except as otherwise provided in the Plan, all Persons and Entities shall be precluded from asserting against the Liquidating Trust, its successors or its assets or properties, any other or further Claims or Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date.

R.     Conditions Precedent to Plan Consummation

1.     Conditions Precedent to Confirmation

It shall be a condition to Confirmation of the Plan that all provisions, terms and conditions of the Plan and the Disclosure Statement are approved in the Confirmation Order.

2.     Conditions Precedent to Occurrence of Effective Date

It shall be a condition to occurrence of the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of the Plan:

(i)     Fourteen (14) days have passed since the entry of the Confirmation Order as a Final Order in form and substance satisfactory to the Debtors and the Committee in their absolute discretion.   The Confirmation Order shall provide that, among other things:

a.     the Debtors and the Liquidating Trust are authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, and other agreements or documents created in connection with the Plan; and

b.     the provisions of the Confirmation Order are nonseverable and mutually dependent.

(ii)     The appointment of the Liquidating Trustee shall have been confirmed by the Confirmation Order or order of the Bankruptcy Court.

(iii)     All actions, documents and agreements necessary to implement the Plan including, without limitation, the Liquidating Trust Agreement, shall have been effected or executed.

3.     Waiver of Conditions

Except as otherwise required by the tenets of the Plan, the Debtors, with the consent of the Committee, may waive any of the conditions to Confirmation of the Plan and/or to occurrence of the Effective Date of the Plan at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to confirm and/or consummate the Plan.

4.     Debtors' Right of Revocation or Withdrawal

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent plans. If the Debtors revoke or withdraw the Plan, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests), assumption or rejection of executory contracts or leases affected by the Plan, and any

document or agreement executed pursuant hereto, shall be deemed null and void, and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, such Debtors or any other Person (ii) prejudice in any manner the rights of such Debtors or any other Person, or (iii) constitute an admission of any sort by the Debtors or any other Person.

S.    Miscellaneous Provisions

1.    Payment of Statutory Fees

All fees payable pursuant to section 1930(a) of Title 28 of the United States Code, as determined by the Bankruptcy Court at the hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid out of the Assets of the Estate or the Liquidating Trust, as applicable, for each quarter (including any fraction thereof) until the Chapter 11 Case is converted, dismissed or closed, whichever occurs first.

2.    Binding Effect of Plan

Except as otherwise provided in Bankruptcy Code § 1141(d)(3), on and after the Effective Date, the provisions of the Plan shall bind any Holder of a Claim against, or Interest in, the Debtors, the Estates, the Liquidating Trust and their respective successors or assigns, whether or not the Claim or Interest of such Holders is impaired under the Plan and whether or not such Holder has accepted the Plan. The rights, benefits and obligations of any entity named or referred to in the Plan, whose actions may be required to effectuate the terms of the Plan, shall be binding on and shall inure to the benefit of any heir, executor, administrator, successor or assign of such entity (including, without limitation, the Liquidating Trustee and any trustee appointed for the Debtors under chapters 7 or 11 of the Bankruptcy Code).

3.    Final Order

Except as otherwise expressly provided in the Plan, any requirement in the Plan for a Final Order may be waived by the Debtors in consultation with the Committee upon written notice to the Bankruptcy Court. No such waiver shall prejudice the right of any party in interest to seek a stay pending appeal of any order that is not a Final Order.

4.    Withholding and Reporting Requirements

In connection with the Plan and all instruments issued in connection herewith and distributions under the Plan, the Liquidating Trust and the Liquidating Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions under the Plan shall be subject to any such withholding and reporting requirements.

5.    Tax Exemption

Pursuant to Bankruptcy Code § 1146, any transfers from the Debtors, the Liquidating Trust or the Liquidating Trustee to any other Person or entity pursuant to the Plan, or any agreement regarding the transfer of title to or ownership of the Debtors' or the Liquidating Trust's real or personal property, or the issuance, transfer or exchange of any security under the Plan, or the execution, delivery or recording of an instrument of transfer pursuant to, in

implementation of or as contemplated by the Plan, including, without limitation, any transfers to or by the Liquidating Trustee of the Debtors' or the Liquidating Trust's property in implementation of or as contemplated by the Plan (including, without limitation, any subsequent transfers of property by the Liquidating Trustee) shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee or other similar tax or governmental assessment. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument under the Plan is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

6.    Governing Law

Except to the extent a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless specifically stated, the rights, duties and obligations arising under the Plan, any agreements, documents and instruments executed in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreements shall control), and, with respect to the Debtors and the Liquidating Trust, corporate governance matters shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to conflicts of law principles.

7.    Severability

After the Effective Date, should the Bankruptcy Court or any other court of competent jurisdiction determine that any provision in the Plan is either illegal on its face or illegal as applied to any Claim, such provisions shall be unenforceable either as to all Holders of Claims or as to the Holder of such Claim as to which the provision is illegal, respectively. Such a determination of unenforceability shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

8.    Revocation

The Debtors, in consultation with the Committee, reserve the right to revoke and withdraw the Plan prior to the Confirmation Date. If the Debtors revoke or withdraws the Plan, then the Plan shall be null and void and, in such event, nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtors, the Committee or any other Person or to prejudice in any manner the rights of the Debtors, the Committee or any Person in any further proceedings involving the Debtors, or be deemed an admission by the Debtors and/or the Committee.

9.    Amendments and Modifications

The Debtors may alter, amend or modify the Plan under Bankruptcy Code § 1127(a) at any time prior to the Confirmation Hearing. After the Confirmation Date and prior to "substantial consummation" (as such term is defined in Bankruptcy Code § 1101(2)) of the Plan, the Debtors, in consultation with the Committee or the Liquidating Trustee in consultation with the Trust Oversight Committee may institute proceedings in the Bankruptcy Court pursuant to

Bankruptcy Code § 1127(b) to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and pursue such matters as may be necessary to carry out the purposes and effects of the Plan, by the filing of a motion on notice to the Bankruptcy Rule 2002 service list only, and the solicitation of all Creditors and other parties-in-interest shall not be required.

10.    Filing of Additional Documents

On or before substantial consummation of the Plan, the Debtors may file with the Bankruptcy Court such agreements or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

11.    Direction to a Party

From and after the Effective Date, the Debtors, the Liquidating Trust or the Liquidating Trustee may apply to the Bankruptcy Court for the entry of an order directing any Person to execute or deliver or to join in the execution or delivery of any instrument or document reasonably necessary or reasonably appropriate to effect a transfer of properties dealt with by the Plan, and to perform any other act (including the satisfaction of any lien or security interest) that is reasonably necessary or reasonably appropriate for the consummation of the Plan.

12.    Successors and Assigns

The rights, benefits and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign of such Person or Entity.

13.    Reservation of Rights

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtors with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtors with respect to the Holders of Claims or Interests prior to the Effective Date.

14.    Section 1146 Exemption

Pursuant to section 1146(c) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax of governmental assessment.

## VI.    FEASIBILITY OF THE PLAN AND THE BEST INTERESTS TEST

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of section 1129 of the Bankruptcy Court have been satisfied. If so, the Bankruptcy

Court will enter the Confirmation Order. Debtors believe that the Plan satisfies or will satisfy the applicable requirements, as follows:

- The Plan complies with the applicable provisions of the Bankruptcy Code.

- The Debtors, as Plan proponents, will have complied with the applicable provisions of the Bankruptcy Code.

- The Plan has been proposed in good faith and not by any means forbidden by law.

- Any payment made or promised under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the case, has been disclosed to the Bankruptcy Court, and any such payment made before the confirmation of the Plan is reasonable, or if such payment is to be fixed after the confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable.

- With respect to each Class of Impaired Claims or Equity Interests, either each Holder of a Claim or Equity Interest of such Class has accepted the Plan or will receive or retain under the Plan on account of such Claim or Equity Interest property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated on such date under Chapter 7 of the Bankruptcy Code.

- Each Class of Claims or Equity Interests that is entitled to vote on the Plan will either have accepted the Plan or will not be impaired under the Plan, or the Plan may be confirmed without the approval of each voting Class pursuant to section 1129(b) of the Bankruptcy Code.

- Except to the extent that the Holder of a particular Claim will agree to a different treatment of such Claim, the Plan provides that Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Other Priority Claims will be paid in full on the Effective Date, or as soon thereafter as practicable.

- At least one Class of Impaired Claims or Equity Interests will have accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim of such Class.

- Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors under the Plan, unless such liquidation or reorganization is proposed in the Plan.

- All fees of the type described in 28 U.S.C. § 1930, including the fees of the United States Trustee, will be paid as of the Effective Date.

Debtors believe that (a) the Plan satisfies or will satisfy all of the statutory requirements of Chapter 11 of the Bankruptcy Code, (b) it has complied, or will have complied, with all of the requirements of Chapter 11 and (c) the Plan has been proposed in good faith.

A.    Feasibility of the Plan

To confirm the Plan, the Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors, unless such liquidation or reorganization is proposed in the Plan. This requirement is imposed by section 1129(a)(11) of the Bankruptcy Code and is referred to as the "feasibility" requirement. The Plan is premised on the creation of the Liquidating Trust, the liquidation of claims and causes of action, and the consummation of other transactions contemplated by the Plan.    The Debtors believe that there will be sufficient cash available to enable the ~~Liqudiating~~Liquidating Trustee to fully and timely perform all obligations described in the Plan and therefore, that the Plan is feasible.

B.    Best Interests Test

1.    Generally

The Bankruptcy Code requires the bankruptcy court to determine that a Plan is in the "best interests" of all holders of claims and interests that are impaired by the Plan and that have not accepted the Plan.   The "best interests" test, as set forth in section 1129(a)(7) of the Bankruptcy Code, requires a bankruptcy court find that each holder of a claim or interest in an impaired class either (i) has accepted the Plan or (ii) will receive or retain under the Plan property of a value, as of the effective date of the Plan, that is not less than the amount that such holder would recover if the debtor were liquidated under Chapter 7 of the Bankruptcy Code.

The Cash available for satisfaction of Allowed Claims would consist of the proceeds resulting from the liquidation of the Debtors' remaining assets, augmented by the Cash, if any, held by the Debtors at the time of the commencement of the chapter 7 cases. Any such Cash amount would then be reduced by the amount of any Allowed Claims secured by such assets, the costs and expenses of the liquidation and such additional Administrative Claims and other priority claims that may result from the use of chapter 7 for the purposes of liquidation. The costs of liquidation under chapter 7 would include fees payable to a trustee in bankruptcy, as well as those that might be payable to his or her attorneys and to other professionals that such trustee may engage, plus any unpaid expenses incurred by the Debtors during the Chapter 11 Cases that would be allowed in the chapter 7 cases, such as compensation for attorneys, appraisers, accountants or other professionals and costs and expenses of the Debtors and the Committee. Such Administrative Claims would have to be paid in Cash, in full from the liquidation proceeds before the balance of those proceeds could be made available to pay other Claims.

2.    Debtors' Best Interests Test

The Debtors believe that the Plan meets the "best interests" test of section 1129(a)(7) of the Bankruptcy Code.   The Debtors have already substantially effectuated an orderly liquidation of their assets during the course of these Chapter 11 cases. Conversion of

these Chapter 11 Cases to Chapter 7 would result in additional costs to the Estates. In chapter 7 cases, the chapter 7 trustee would be entitled to seek a sliding scale commission based upon the funds distributed by such trustee, even though the Debtors, through their orderly liquidation efforts, have already accumulated much of the funds and have already incurred many of the expenses associated with generating those funds. In light of historical experience from other cases, the Debtors believe that the costs of such fees for a chapter 7 trustee and the professional fees for the professionals retained by the chapter 7 trustee would be at least 5% of available funds.

Accordingly, the Debtors believe that there is a reasonable likelihood that Creditors would "pay again" for the funds accumulated by the Debtors, since the chapter 7 trustee would be entitled to receive a commission in some amount for all funds distributed, including the substantial funds already collected by the Debtors through their liquidation efforts. It is also anticipated that chapter 7 liquidations would result in delay in the Distributions to Creditors. Among other things, chapter 7 cases would trigger a new bar date for filing Claims that would be more than 90 days following conversion of the case to chapter 7. Fed. R. Bankr. P. 3002(c). Hence, chapter 7 liquidations would not only delay Distributions, but raise the prospect of additional Claims that were not asserted in the Chapter 11 Cases. Based on the foregoing, the Plan provides an opportunity to bring the greatest return to Creditors.

Article IV.M. of this Disclosure Statement discusses the current status of the Debtors' liquidation and provides a discussion regarding estimated amounts of funds available for distribution to general unsecured creditors. The Debtors believe that, in the event of conversion of the case to a case under chapter 7, distributions will be reduced by the extra layer of administrative expense created by conversion, as well as significantly delayed.

The Debtors believe that, if the Plan is not confirmed or is not confirmable, the only likely alternative will be conversion of the Chapter 11 Cases to chapter 7 liquidations. For the reasons set forth above, the Debtors believe that the Plan is more likely to yield economic benefits to unsecured creditors than chapter 7 liquidations because it will avoid a layer of administrative expense associated with the appointment of a chapter 7 trustee, while decreasing the efficiency of administrating the Debtors' assets for the benefit of their Creditors.

The Debtors believe that the members of each Impaired Class will receive at least as much under the Plan as they would in a liquidation in a hypothetical chapter 7 case.

C.     Confirmation Without Acceptance by All Impaired Classes:  The 'Cramdown' Alternative

Section 1129(b) of the Bankruptcy Code provides that a plan may be confirmed even if it has not been accepted by all impaired classes as long as at least one impaired class of claims has accepted it. The Bankruptcy Court may confirm the Plan at the request of the Debtors notwithstanding the Plan's rejection (or deemed rejection) by impaired classes as long as the Plan "does not discriminate unfairly" and is "fair and equitable" as to each impaired class that has not accepted it. A plan does not discriminate unfairly within the meaning of the Bankruptcy Code if a dissenting class is treated equally with respect to other classes of equal rank.

A plan is fair and equitable as to a class of secured claims that rejects such plan if the plan provides (1)(a) that the holders of claims included in the rejecting class retain the lien securing those claims, whether the property subject to those liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims, and (b) that each holder of a claim of such class receives on account of that claim deferred cash payments totaling at least the allowed amount of that claim of a value, as of the effective date of the plan, of at least the value of the holder's interest in the estate's interest in such property; (2) for the sale, subject to section 363(k) of the Bankruptcy Code, of any property that is subject to the liens securing the claims included in the rejecting class, free and clear of the liens, with the liens to attach to the proceeds of the sale, and the treatment of the liens on proceeds under clause (1) or (2) of this paragraph; or (3) for the realization by such holders of the indubitable equivalent of such claims.

A plan is fair and equitable as to a class of unsecured claims which rejects a plan if the plan provides (1) for each holder of a claim included in the rejecting class to receive or retain on account of that claim property that has a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (2) that the holder of any claim or interest that is junior to the claims of such rejecting class will not receive or retain on account of such junior claim or interest any property at all.

A plan is fair and equitable as to a class of equity interests that rejects a plan if the plan provides (1) that each holder of an interest included in the rejecting class receives or retains on account of that interest property that has a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest; or (2) that the holder of any interest that is junior to the interest of such rejecting class will not receive or retain under the plan on account of such junior interest any property at all.

The votes of holders of Claims and Equity Interests under Classes 5, 6, and 7 are not being solicited because such holders are not entitled to receive or retain under the Plan any interest in property on account of their Claims and Interests. Such Classes therefore are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Accordingly, the Debtors are seeking confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to such Classes and may seek confirmation pursuant to the Plan (as may be modified) as to other Classes if such Classes vote to reject the Plan. Notwithstanding the deemed rejection by such Classes, the Debtors believe that Classes 5, 6 and 7 are being treated fairly and equitably under the Bankruptcy Code. The Debtors therefore believe the Plan may be confirmed despite its deemed rejection by these Classes.

## VII. IMPORTANT CONSIDERATIONS AND RISK FACTORS

### A. The Debtors Have No Duty To Update

The statements contained in this Disclosure Statement are made by the Debtors as of the date of the Plan, unless otherwise specified in the Plan, and the delivery of this Disclosure Statement after that date does not imply that there has been no change in the information set

forth in the Plan since that date. The Debtors have no duty to update this Disclosure Statement unless otherwise ordered to do so by the Court.

B.      No Representations Outside The Disclosure Statement Are Authorized

No representations concerning or related to the Debtors, the Chapter 11 Cases or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement. Any representations or inducements made to secure your acceptance, or rejection, of the Plan that are other than as contained in, or included with, this Disclosure Statement should not be relied upon by you in arriving at your decision. You should promptly report unauthorized representations or inducements to Debtors' counsel, Committee counsel, and the Office of the United States Trustee.

C.      Information Presented Is Based On The Debtors' Books And Records, And No Audit Was Performed

While the Debtors have endeavored to present information fairly in this Disclosure Statement, because of Debtors' financial difficulties, as well as the complexity of Debtors' financial matters, the Debtors' books and records upon which this Disclosure Statement is based might be incomplete or inaccurate. The financial information contained in the Plan, unless otherwise expressly indicated, is unaudited.

D.      All Information Was Provided By Debtors And Was Relied Upon By Professionals

Reed Smith LLP was approved by the Bankruptcy Court to represent the Debtors effective as of the Petition Date as general bankruptcy counsel. All counsel and other professionals for the Debtors have relied upon information provided by the Debtors in connection with preparation of this Disclosure Statement. Although counsel for the Debtors have performed certain limited due diligence in connection with the preparation of this Disclosure Statement, counsel have not verified independently the information contained herein.

E.      Projections And Other Forward Looking Statements Are Not Assured, And Actual Results Will Vary

Certain of the information contained in this Disclosure Statement is, by nature, forward looking, and contains estimates and assumptions which might ultimately prove to be incorrect, and contains projections which may be materially different from actual future experiences. There are uncertainties associated with any projections and estimates, and they should not be considered assurances or guarantees of the amount of funds or the amount of Claims in the various classes that might be allowed.

The allowed amount of Claims in each Class could be significantly more than projected, which in turn, could cause the value of distributions to be reduced substantially. If Administrative Claims and/or Other Priority Claims exceed projections, it may impair the value of the distributions to the holders of Class 4 Claims. While the Debtors believe that their projections are reasonable, there can be no assurance that they will be realized, resulting in recoveries that could be significantly less than projected.

F.    No Legal Or Tax Advice Is Provided To You By This Disclosure Statement

The contents of this Disclosure Statement should not be construed as legal, business or tax advice. Each creditor or Holder of Equity Interest should consult his, her or its own legal counsel and accountant as to legal, tax and other matters concerning his, her, or its Claim or equity interest.

This Disclosure Statement is not legal advice to you. This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to confirmation of the Plan.

G.    No Admissions Made

Nothing contained herein or in the Plan shall constitute an admission of any fact or liability by any party (including, without limitation, the Debtors) or to be deemed evidence of the tax or other legal effects of the Plan on the Debtors or on Holders of Claims or Equity interests.

H.    No Waiver of Rights Except as Expressly Set Forth in the Plan

A creditor's vote for or against the Plan does not constitute a waiver or release of any Claims or rights of the Debtors (or any party in interest, as the case may be) to object to that creditor's Claim, or recover any preferential, fraudulent or other voidable transfer or estate assets, regardless of whether any Claims of the Debtors or their respective estates are specifically or generally identified herein or in the Plan.

I.    Bankruptcy Law Risks and Considerations

1.    Confirmation of the Plan is Not Assured

Although the Debtors believe that the Plan will satisfy all requirements necessary for Confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will reach the same conclusion. There can also be no assurance that modifications to the Plan will not be required for Confirmation or that such modifications would not necessitate resolicitation of votes.

2.    The Effective Date Might Be Delayed or Never Occur

There can be no assurance as to the timing of the Effective Dates or that either or both Effective Dates will occur. If the conditions precedent to the Effective Date set forth in the Plan have not occurred or been waived, the Confirmation Order shall be vacated in accordance with the Plan and such Confirmation Order. In that event, no Distributions would be made, and the Holders of Claims and Equity Interests would be restored to their previous position as of the moment before Confirmation, and the Debtors' obligations for Claims and the Interests would remain unchanged.

3.    The Projected Value of Estate Assets Might Not Be Realized

In conducting their feasibility and best interests test analyses, the Debtors projected the value of the Estates' Assets which would be available for payment of expenses and distributions to Holders of Allowed Claims, as set forth in the Plan. The Debtors have made certain assumptions, which may prove to be inaccurate.

    4.    <u>Allowed Claims in the Various Classes May Exceed Projections</u>

The Debtors have also projected the allowed amount of Claims in each Class in conducting their feasibility and best interests test analyses. Certain Classes, and the Classes below them in priority, could be significantly affected by the allowance of Claims in an amount that is greater than projected.

## VIII.  CERTAIN FEDERAL INCOME TAX CONSEQUENCES

    A.    <u>Federal Income Tax Consequences of the Plan</u>

The following is a general summary of certain significant U.S. federal income tax consequences of the Plan to the Holders of certain Claims and Interests. This summary is based upon the Internal Revenue Code of 1986, as amended (the "<u>Tax Code</u>"), the Treasury Department regulations promulgated thereunder ("<u>Treasury Regulations</u>"), judicial decisions and current administrative rulings and practice as in effect on the date hereof. These authorities are all subject to change at any time by legislative, judicial or administrative action, and such change may be applied retroactively in a manner that could adversely affect Holders of Claims or Interests and the Debtors.

Due to a lack of definitive judicial or administrative authority or interpretation, the complexity of the application of the Tax Code and Treasury Regulations to the implementation of the Plan, the possibility of changes in the law, the differences in the nature of various Claims and Interests and the potential for disputes as to legal and factual matters, the tax consequences discussed below are subject to substantial uncertainties.

The Disbursing Agent will withhold Distributions provided under the Plan and required by law to be withheld and will comply with all applicable reporting requirements of the Tax Code. Under the Tax Code, interest, dividends and other "reportable payments" may under certain circumstances be subject to "backup withholding". Backup withholding generally applies if the Holder (i) fails to furnish his social security number or other taxpayer identification number ("<u>TIN</u>"), (ii) furnishes an incorrect TIN, (iii) fails to report interest or dividends, or (iv) under certain circumstances fails to provide a certified statement, signed under penalty of perjury, that the TIN provided is his correct TIN and the Holder is not subject to backup withholding. Your Ballot contains a place to indicate your TIN.

    1.    <u>Federal Income Tax Treatment of the Liquidating Trust.</u>

For federal income tax purposes, it is intended that the Liquidating Trust be classified as a liquidating trust under section 301.7701-4 of the Treasury Regulations and that such trust be owned by its beneficiaries (i.e., the Holders of Allowed Claims and Interests). Accordingly, for federal income tax purposes, it is intended that the beneficiaries be treated as if they had received

a distribution from the Debtors' Estates of an undivided interest in the assets of the Liquidating Trust and then contributed such interests to the Liquidating Trust.

<blockquote>
2.      <u>Liquidation Trust Assets Treated as Owned by Holders of Allowed Claims.</u>
</blockquote>

For all federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the Holders of Allowed Claims and Interests) shall treat the transfer of Assets and liabilities to the Liquidating Trust, in accordance with the terms of the Plan, as a transfer to Holders of Allowed Claims and Interests followed by a transfer by such Holders to the Liquidating Trust, and the beneficiaries of the Liquidating Trust shall be treated for federal income tax purposes as the grantors and owners thereof. The beneficiaries of the Liquidating Trust shall be Holders of Allowed Claims and Interests.

## IX.    EFFECT OF CONFIRMATION

### A.    <u>Binding Effect of Confirmation</u>

Confirmation will legally bind the Debtors, all creditors, Equity Interest Holders and other parties in interest to the provisions of the Plan, whether or not the Claim or Equity Interest Holder is impaired under the Plan, and whether or not such creditor or Equity Interest Holder has accepted the Plan.

### B.    <u>Vesting Of Assets Free And Clear Of Liens, Claims And interests</u>

Except as otherwise provided in the Plan or in the Confirmation Order, upon the Effective Date, title to all assets and property of the Debtors, and all property of the Estates, including, pursuant to section 1123(b)(3)(b) of the Bankruptcy Code, each and every Claim, demand or Cause of Action which the Debtors have or have power to assert immediately prior to Confirmation, will vest in the Reorganized Debtors free and clear of all liens, Claims and Interests. Thereafter, the Reorganized Debtors will hold these assets without further jurisdiction, restriction or supervision of the Bankruptcy Court, except as may be provided in this Disclosure Statement or the Plan.

### C.    <u>Good Faith</u>

Confirmation of the Plan shall constitute a finding that the Plan has been proposed in good faith and in compliance with applicable provisions of the Bankruptcy Code.

# X. ALTERNATIVES TO PLAN

The Debtors believe that if the Plan is not confirmed, or is not confirmable, the alternatives to the Plan include: (a) the conversion to chapter 7 case(s); (b) dismissal of the case(s); and/or (c) an alternative chapter 11 plan.

## A. Liquidation Under Chapter 7

If no plan can be confirmed, the Chapter 11 Cases may be converted to Chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be appointed to liquidate the assets of the Debtors for distribution to creditors in accordance with the priorities established by the Bankruptcy Code. For the reasons previously discussed above, the Debtors believe that Confirmation of the Plan will provide each Holder of an Unsecured Claim entitled to receive a distribution under the Plan with a recovery that is expected to be more than or equal to what it would receive in a liquidation under Chapter 7 of the Bankruptcy Code.

## B. Dismissal

Dismissal of the Chapter 11 Case(s) would allow creditors to exercise their state law rights. In a dismissal scenario, there will be no equality of distribution and many, if not most, unsecured creditors would not receive any Distribution.

## C. Alternative Plan

The Debtors believe that any alternative plan would not result in as favorable of treatment of Claims as proposed under the Debtors' Plan.

## XI.    CONCLUSION

The Debtors believe that the Plan maximizes recoveries to all creditors and, thus, is in their best interests.  The Plan as structured, among other things, allows creditors to participate in distributions in excess of those that would be available if the Debtors were liquidated under chapter 7 of the Bankruptcy Code and minimizes delays in recoveries to all creditors.

**THE DEBTORS URGE CREDITORS TO <u>ACCEPT</u> THE PLAN AND TO EVIDENCE SUCH ACCEPTANCE BY RETURNING THEIR PROPERLY COMPLETED BALLOT(S) SO THAT THEY WILL BE ACTUALLY RECEIVED, AS INSTRUCTED ABOVE, BY THE SOLICITATION AGENT IDENTIFIED HEREIN at 5:00 P.M., PREVAILING EASTERN TIME, ON ___, 2010.**

By: David Young
Title: Chief Executive Officer of the Debtors

Document comparison by Workshare Professional on Thursday, December 16, 2010
11:34:16 AM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://DIGITALFILE/US_ACTIVE/105136409/1 |
| Description | #105136409v1<US_ACTIVE> - MPC - Second AMENDED Disclosure Statement |
| Document 2 ID | interwovenSite://DIGITALFILE/US_ACTIVE/105136409/2 |
| Description | #105136409v2<US_ACTIVE> - MPC - Second AMENDED Disclosure Statement |
| Rendering set | ReedSmith Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 176 |
| Deletions | 68 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 244 |